[Crim. No. 21792. Second Dist., Div. Five. Feb. 16, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
ALBERT BALASSY, Defendant and Appellant.

## COUNSEL

Ann Palmer, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KEENE, J.**[*]—In a 14-count information Albert Balassy, along with three codefendants, was charged with one count of a violation of Penal Code section 182 (conspiracy to commit forgery of a fictitious name), eight counts of violations of Penal Code section 470 (forgery of a fictitious name), two counts of violations of Penal Code section 475 (possession of blank fictitious traveler's check), one count of violation of Penal Code section 475a (possession of completed fictitious traveler's check), and two counts of violations of Penal Code section 476 (issuing a fictitious check). He was convicted by a jury, along with his codefendants, of one count of conspiracy and seven counts of forgery of a fictitious name. (The remaining counts were dismissed, three prior to trial and three after being mistried.)

The defendant was sentenced to the state prison for the term prescribed by law on all counts and in addition was ordered to pay a fine of five thousand dollars ($5,000) on count 1 (conspiracy). Counts 2, 3, 4, 5, 11, 12 and 13 were ordered to run concurrently to the sentence imposed on count 1 and their execution was stayed pending determination of any appeal as to count 1, such stay to become permanent when the sentence for count 1 is completed.

Prior to trial, a motion to suppress the evidence taken from the defendant and his vehicle subsequent to his arrest was made pursuant to Penal Code section 1538.5 and, by stipulation of all parties, was determined on the testimony given at the preliminary hearing as reflected in the transcript of that proceeding; it was denied. The defendant now appeals from the judgment of conviction.

Defendant contends that the arresting officer lacked probable cause to arrest him, the subsequent searches of the automobile trunk and wallet were not incident to a valid arrest, and, in any case, were beyond the scope of lawful searches. An analysis of the defendant's contentions in the context of the factual situation as shown by the testimony given at the preliminary hearing leads us to the conclusion that they are void of merit; we affirm the judgment of conviction.

Albert ("Bertsy") Balassy ["Bertsy" is a Hungarian nickname for "Albert"] and his codefendants in this case, Sandor Nagy, Joseph Unszusz, and Gyorgy Raday were all involved in a substantial criminal scheme of

---

[*]Assigned by the Chairman of the Judicial Council.

uttering $100 counterfeit American Express traveler's checks. The method of operation was to cash each check at a local market usually buying one bottle of whiskey and taking the balance in cash. An affinity for Canadian Club is clearly discernible and, adding further international flavor to their California operation, individuals of Hungarian descent were enlisted to do the cashing; this, however, was only after a franchise and/or initiation fee of $200 was collected. These "Hungarian connections" were made at such places as the Blue Danube Bar, Balaton and Paprika Hungarian restaurants, and, somewhat anomalously, the El Centro Bowling Alley. The defendant contacted one Hans Aczel at the bowling alley location and, after first extracting the $200 initial investment, he obtained his agreement to participate in passing traveler's checks with the promise that "easy" money was at hand. In consideration for his fee, Aczel was furnished with a false eastern state driver's license, counterfeit traveler's checks and transportation to two locations for his first utterance lessons. "Joe" [Unszusz] accompanied the defendant and Aczel to a Safeway Market and then to Kay's Liquor Store; at each store, after Aczel exhibited some hesitation, "Joe" left the car with a counterfeit check, returning shortly thereafter with his small purchase and cash. Aczel at this point became frightened and, somewhat belatedly realizing that the operation was illegal, asked for his $200 back. The defendant refused and told Aczel to "keep his mouth shut" or he would be taken care of; Aczel did not comply and went to the American Express; the American Express went to the police.

With the exception of the true names of "Bertsy" and his confederates, all of the above information, and more, was related to the American Express special agents by Aczel and later to Sergeant Fred W. Kalas, deputy sheriff for the County of Los Angeles. Based upon Aczel's revelations, the counterfeit traveler's check which "Joe" passed at Kay's Liquor Store was retrieved by the American Express agents and turned over to Sergeant Kalas. Aczel also gave to Sergeant Kalas a physical description of both "Bertsy" and "Joe," and described the car used as being a bluish-green Chevrolet bearing license number WCZ 108 which was rented by "Bertsy" in his true name. He further told the officer that he had observed approximately $20,000 worth of counterfeit traveler's checks in "Bertsy's" possession, which he kept either on his person or in the trunk of the car along with a weapon. He described "Bertsy" as being always armed, extremely dangerous, and one who would not hesitate to kill. Insofar as "Joe" was concerned, Aczel told the sergeant that he had previously been employed by a Cadillac agency in Hollywood; which information, when subsequently confirmed by the officer, led to the disclosure that "Joe's"

last name was something like "Unsur." A check on the vehicle revealed a registration in the name of All-Car Rent-A-Car in Hollywood where Sergeant Kalas found out that the car had been rented by "Albert Balassy," using a New York driver's license and the Hotel Harvey as a local address. Sergeant Kalas further obtained from the manager of the car rental the information that the car was "overdue," a request to pick it up and a physical description of "Bertsy." A check at the hotel revealed no registration in the name of the defendant. However, the vehicle, a 1968 turquoise Chevrolet, bearing license number WCZ 108, was found parked directly behind the hotel and surveilled for three days prior to the arrest and searches in question. During the surveillance the defendant and his cohorts were observed in the car at various times while it was being driven by the defendant. Numerous stops, entrances and exits from the vehicle were observed and on one occasion the trunk was opened by the defendant, who was observed to handle and examine four to six packages (". . . a couple . . . long business type envelopes . . . several . . . shorter thicker packets").

During the course of this surveillance, the vehicle was occasionally "lost" and "refound" and during one such interval Sergeant Kalas encountered a person by the name of Janos Toth at the Paprika Hungarian Restaurant who, upon invitation, accompanied the sergeant to the station. The two had been previously introduced by Aczel and on this occasion Toth gave Sergeant Kalas further information about "Bertsy": he had a bad criminal record and was from New York, he was always armed with either a gun on his person or in his car and he had recruited individuals from the Hungarian community to cash American Express traveler's checks.

When the defendant was arrested at 1 a.m. on October 2, 1971, he and codefendant Nagy had just entered the turquoise Chevrolet which was parked across from the Blue Danube Restaurant. Sergeant Kalas was the arresting officer and upon patting the defendant down recovered an object from his right front trouser which felt to the officer like a gun, but turned out to be a packet of bills totaling $800. Two liquor bottles were observed in the front seat of the car. Looking for a possible weapon, and packets of counterfeit traveler's checks, Sergeant Kalas opened the trunk of the Chevrolet at the scene of the arrest, but found none. The search, however, did disclose an eastern state driver's license in the name of "Richard D. Smith" bearing a photograph of defendant. Sergeant Kalas, being concerned with its proximity to the Blue Danube Bar, drove the car to the West Hollywood sheriff's station where it was impounded and the search of the trunk continued. Found at this time were further items of false identification and 18 counterfeit blank American Express traveler's checks.

## DID THE ARRESTING OFFICER HAVE PROBABLE CAUSE TO ARREST THE DEFENDANT? YES.

■ In this case, the arrest and searches were made without a warrant. A peace officer may arrest a person without a warrant whenever he has reasonable cause to believe that the person to be arrested has committed a felony. (Pen. Code, § 836, subd. 3.) Respondent argues that the informer Hans Aczel witnessed but did not participate in any criminal activity, and that therefore he should be characterized as a "citizen-informer"; and as such the information he communicated to Sergeant Kalas would have constituted reasonable cause for arresting Balassy. (*People* v. *Bevins* (1970) 6 Cal.App.3d 421 [85 Cal.Rptr. 876]; *People* v. *Guidry* (1968) 262 Cal.App.2d 495 [68 Cal.Rptr. 794]; *People* v. *Lewis* (1966) 240 Cal.App.2d 546 [49 Cal.Rptr. 579].) We need not determine this issue to find probable cause for the arrest; it was more than sufficient.

Hans Aczel had never given information to the police before September 29, 1971. Thus, he must be considered to be a known-informer of unproven reliability. ■ Information given by an untested informer is sufficient, if, as in this case, it is corroborated in essential respects, by other facts, sources or circumstances. (*People* v. *Lara* (1967) 67 Cal.2d 365, 374 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Sheridan* (1969) 2 Cal. App.3d 483, 487-488 [82 Cal.Rptr. 695]; *People* v. *Diggs* (1958) 161 Cal.App.2d 167, 171 [326 P.2d 194].) ■ "Such corroboration need not itself amount to reasonable cause to arrest; its only purpose is to provide the element of 'reliability' missing when the police have had no prior experience with the informant. Accordingly, it is enough if it gives the officers reasonable grounds to believe the informant is telling the truth, for in this type of case the issue is 'not whether the information obtained by the officers emanated from a reliable source, but whether the officers could reasonably rely upon that information under the circumstances.' " (*People* v. *Lara, supra,* 67 Cal.2d 365, 374-375.)

■ The informer was corroborated: (1) The counterfeit American Express traveler's check from Kay's Liquor Store identified by the American Express agents was tangible evidence to support the informer's claim that a counterfeit check had been passed at that store. (2) Investigation at All-Car Rent-A-Car corroborated the informer's description of the car, of the defendant, and the defendant was from New York. (3) The Cadillac agency confirmed that a Hungarian named "Joe" had worked there. (4) Surveillance of the defendant revealed that he did in fact drive the identified car and frequented the places named by the informer, accompanied by Joe Unszusz. (5) The officer observed the envelopes and the packets in the trunk of defendant's car, corroborating the informer's statements per-

taining to where the defendant kept the counterfeit checks. (6) Finally, informer Janos Toth substantiated the name of the defendant, that he was from New York, was likely to be armed, and that he was recruiting individuals of Hungarian descent to cash American Express traveler's checks. Toth, also an untested informer, cannot be accorded reliability merely through his status as a citizen-informer, due to the fact that his statements, in contrast to Aczel's lacked specificity and evidence of personal knowledge. (*Krauss* v. *Superior Court* (1971) 5 Cal.3d 418, 422 [96 Cal.Rptr. 455, 487 P.2d 1023].) Neither informer by himself, could provide sufficient reasonable cause for the arrest (*People* v. *Fein* (1971) 4 Cal.3d 747, 752 [94 Cal.Rptr. 607, 484 P.2d 583]; *Mann* v. *Superior Court* (1970) 3 Cal.3d 1, 6-7 [88 Cal.Rptr. 380, 472 P.2d 468]).

■ However, one "unreliable" informer's statements may be corroborated by those of another, if they were interviewed independently, at a different time and place. (*Clifton* v. *Superior Court* (1970) 7 Cal.App.3d 245, 253-254 [86 Cal.Rptr. 612]; *People* v. *Sheridan, supra,* 2 Cal.App.3d 483, 489; *People* v. *Gamboa* (1965) 235 Cal.App.2d 444, 447 [45 Cal.Rptr. 393].) The fact that Toth's statements may be hearsay or based on reputation does not deny them weight on the issue of probable cause. Hearsay and reputation evidence can be considered as a part of the total factual situation. (*United States* v. *Harris* (1971) 403 U.S. 573 [29 L.Ed.2d 723, 91 S.Ct. 2075]; *People* v. *Benjamin* (1969) 71 Cal.2d 296 [78 Cal.Rptr. 510, 455 P.2d 438].)

Appellant relies solely on the language in *People* v. *Fein, supra,* at page 753, requiring the corroboration of an informer must pertain to the alleged *criminal* activity. In the present case, although much of the officer's surveillance and observation related to activities of the defendant that were consistent with innocent conduct, he did have a counterfeit check and information from a second informer all directly relating to the criminal activity of the defendant. We find the totality of information, when considered together, more than sufficient to justify the officer's reliance on the statements of informer Aczel; the cause for arrest was indeed probable if not conclusive with which went the corollary obligation to make the arrest.

### WAS THE SEARCH OF DEFENDANT'S PERSON AND VEHICLE LAWFUL? YES.

■ Appellant concedes the lawfulness of the patdown search conducted at the scene of the arrest. We therefore focus on the impoundment and search of the car at the sheriff's station.

■ To be incident to a lawful arrest, a warrantless search must be limited both as to time (*Preston* v. *United States* (1964) 376 U.S. 364, 367-368 [11 L.Ed.2d 777, 780-781, 84 S.Ct. 881]) and place (*Chimel* v. *California* (1969) 395 U.S. 752, 762-763 [23 L.Ed.2d 685, 693-694, 88 S.Ct. 2034]). It is now well settled that once the accused is safely in custody at the station house, removed from the vicinity of his car, the reasons justifying a warrantless search of a vehicle as incident to an arrest no longer obtain. (*Chambers* v. *Maroney* (1970) 399 U.S. 42, 47 [26 L.Ed.2d 419, 426, 90 S.Ct. 1975]; *Preston* v. *United States, supra,* 376 U.S. 364, 367 [11 L.Ed.2d 777, 780]; *Mestas* v. *Superior Court* (1972) 7 Cal.3d 537, 541 [102 Cal.Rptr. 729, 498 P.2d 977].)

Nevertheless, the search of the trunk of the vehicle was lawful. ■ Automobiles, because of their mobility, may be searched without a warrant where the officer has reasonable cause to believe that it contains contraband or instruments or evidence of a crime. (*Chambers* v. *Maroney, supra,* 399 U.S. 42, 48-49 [26 L.Ed.2d 419, 426-427]; *Carroll* v. *United States* (1925) 267 U.S. 132, 158-159 [69 L.Ed. 543, 553-554, 45 S.Ct. 280]; *People* v. *Superior Court* (1970) 3 Cal.3d 807, 815-816 [91 Cal. Rptr. 729, 478 P.2d 449]; *People* v. *Terry* (1969) 70 Cal.2d 410, 428 [77 Cal.Rptr. 460, 454 P.2d 36].) ■ Here the circumstances justifying the arrest are also those furnishing probable cause for the search. (*Chambers* v. *Maroney, supra,* 399 U.S. 42, 47, fn. 6 [26 L.Ed.2d 419, 426, fn. 6].) Sergeant Kalas had information from the informer that defendant kept counterfeit checks on his person or in the trunk of his car, and this was corroborated when the officer observed defendant open his trunk to examine envelopes and packets.

The impoundment of the car was proper. Not only was the arrest made in the middle of the night, rendering a careful search impractical and unsafe, but the car was parked outside a restaurant from which other suspects might soon be exiting. Moreover, the registered owner of the car, All-Car Rental, had requested that the car be picked up, thus authorizing the officer to impound it. Given probable cause, the car could be searched at the station house without a warrant. (*Chambers* v. *Maroney, supra,* 399 U.S. 42, 52 [26 L.Ed.2d 419, 428-429]; *People* v. *Carter* (1972) 26 Cal.App.3d 862, 874 [103 Cal.Rptr. 327]; *People* v. *Medina* (1972) 26 Cal.App.3d 809, 818 [103 Cal.Rptr. 337]; *People* v. *Shaw* (1971) 21 Cal.App.3d 710, 713-714 [98 Cal.Rptr. 724]; *People* v. *Lovejoy* (1970) 12 Cal.App.3d 883, 887 [91 Cal.Rptr. 94].)

■ During the defendant's booking process his wallet was taken from him by Sergeant Kalas and searched for counterfeit checks and identification in the name of the defendant. Although these items were not found, a

piece of stationery with the Hotel Harvey letterhead was taken and placed into evidence at the preliminary hearing. It is contended that this, too, was an illegal search. When a defendant is lawfully arrested and properly taken to jail for booking, he not only *may* be searched but the jailer has the statutory duty to do so. (Gov. Code, § 26640; Pen. Code, §§ 1412, 4003; *People* v. *Mercurio* (1970) 10 Cal.App.3d 426, at p. 430 [88 Cal. Rptr. 750]; *People* v. *Wohlleben* (1968) 261 Cal.App.2d 461, 462 [67 Cal.Rptr. 826]; *People* v. *Rogers* (1966) 241 Cal.App.2d 384 [50 Cal. Rptr. 559].) Albert Balassy was lawfully arrested; he was lawfully arrested for a felony and properly booked. The search of his wallet was legally justified and its contents, if relevant, admissible into evidence.

A concluding note: At defendant's request we appointed counsel to represent him on this appeal. The attorney in question was recommended to us by a judge of the superior court. As far as we can tell she has competently handled a difficult, if not impossible, assignment. For months defendant has asked us to arbitrate disputes between him and his attorney. This is not our function. Although we have, from time to time, attempted to shortcircuit future proceedings when apparent inadequacy of representation on appeal stared us in the face (e.g., *People* v. *Rose* (1972) 28 Cal. App.3d 415, 417-418 [104 Cal.Rptr. 702]), such is manifestly not the case here.

The judgment of conviction is affirmed.

Kaus, P. J., and Stephens, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 25, 1973.