41 Cal.App.3d 181 (1974)
116 Cal. Rptr. 317
THE PEOPLE, Plaintiff and Respondent,
v.
JOHN L. GILLIAM, Defendant and Appellant.
Docket No. 11581.
Court of Appeals of California, First District, Division One.
August 19, 1974.
*186 COUNSEL
Henry P. Schroerluke, under appointment by the Court of Appeal, for Defendant and Appellant.
Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., and Jack R. Winkler, Chief Assistant Attorneys General, William E. James and Edward P. O'Brien, Assistant Attorneys General, Robert R. Granucci and David Schneller, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
MOLINARI, P.J.
Defendant appeals from the judgment upon a verdict finding him guilty of first degree robbery (Pen. Code, § 211). He makes several assignments of alleged prejudicial error which we find to be without merit. Accordingly, the judgment must be affirmed.
(1a) We consider, first, defendant's contention that a booking search conducted after he was placed under arrest was an unreasonable search. The search disclosed a Mobil Oil credit card which defendant moved to suppress by motion made pursuant to Penal Code section 1538.5.[1] The credit card had been taken from the victim of an armed robbery.
The record discloses that when defendant was stopped for a traffic violation a warrant check was run on defendant and it was ascertained that *187 there was an outstanding traffic warrant for his arrest. The arresting officer advised defendant that he had the right to post bail and inquired of him if he had enough money to post bail. Defendant replied that he did not. The officer then advised defendant that he would have to be placed under arrest and booked on the warrant. Defendant was placed under arrest and taken to the police station. (2a) "[A] defendant arrested on a warrant for a traffic offense may not be booked or searched until he has been given an opportunity to post bail.... [W]hen he has been given that opportunity and it appears that he cannot post bail he then may be booked and searched since, in the absence of bail, he must be placed in the jail pursuant to the warrant. [Citation.] ... (3) [I]f the police are justified in jailing a defendant they are entitled to `book' him and to conduct a search of his person for the purpose of preventing the introduction of weapons or contraband into the jail facility. [Citations.]" (People v. Collin, 35 Cal. App.3d 416, 423-424 [110 Cal. Rptr. 869].) (2b) Whether such a defendant has been given an opportunity to post bail is a question of fact. (People v. Collin, supra.)
(1b) In the present case there was sufficient evidence warranting the inference that defendant was given a reasonable opportunity to post bail. We observe, moreover, that prior to the booking search the arresting officer was in possession of additional evidence giving him probable cause to arrest defendant for the commission of a liquor store robbery and that a booking search, following such arrest, was proper. (See People v. Superior Court [Simon] 7 Cal.3d 186, 208 [101 Cal. Rptr. 837, 496 P.2d 1205]; People v. Collin, supra, 35 Cal. App.3d 416, 424; People v. Mercurio, 10 Cal. App.3d 426, 430 [88 Cal. Rptr. 750]; People v. Wohlleben, 261 Cal. App.2d 461, 462 [67 Cal. Rptr. 826].) Defendant was booked not only on the traffic warrant but also for armed robbery.
On arrival at the police station the officer received certain teletypes which list information concerning stolen vehicles and wanted persons. One teletype stated that a Negro male wearing a striped shirt was wanted for armed robbery. This description fitted defendant. A further check with the police station from which the description was relayed disclosed the license number of a vehicle reported to have been driven by the robber involved in the robbery of a liquor store. This was the same license number as that of the vehicle which the officer had stopped for the traffic violation and which defendant was driving. The officer then walked over to defendant, told him he was under arrest for armed robbery, advised him of his rights, and took him to the city prison where he was booked and searched.
*188 (4a) Defendant also argues that it is improper for an officer, upon stopping a vehicle, to conduct a routine warrant search. If such a check had not been made defendant would not have been arrested since the traffic offense for which he was arrested was one for which he would have received a citation. Defendant principally relies on Willett v. Superior Court, 2 Cal. App.3d 555 [83 Cal. Rptr. 22].[2] In Willett the defendant was stopped for a routine traffic violation (one of his taillights was out) at about 5:30 p.m. He was detained by the officer for 40 minutes or more while a record check was being conducted. (At p. 558.) The court held it was impermissible to detain the defendant 40 minutes to make a record check absent any suspicious circumstances other than the equipment failure. (At p. 559.)
In the instant case there is no showing that the detention for the purpose of running the warrant check was unreasonably long. In fact, there is no showing at all as to how long defendant was detained. (5) There is ample authority holding that where an automobile is stopped for a traffic violation it is not unreasonable to detain the occupants for a short period of time for the purpose of determining whether there are outstanding traffic warrants against the driver or other information relating to him in police records. (People v. Bremmer, 30 Cal. App.3d 1058, 1061-1062 [106 Cal. Rptr. 797]; People v. Brown, 272 Cal. App.2d 448, 450 [77 Cal. Rptr. 438]; People v. Elliott, 186 Cal. App.2d 185, 189 [8 Cal. Rptr. 716];[3] see Carpio v. Superior Court, 19 Cal. App.3d 790, 792-793 [97 Cal. Rptr. 186]; and see People v. Grace, 32 Cal. App.3d 447, 453, fn. 3 [108 Cal. Rptr. 66],[4] where the court expressed "strong doubt as to the propriety of what has seemingly become a standard police practice of running a `record check' on all drivers stopped for minor traffic violations.")[5]
(4b) Since there was no evidence in the present case that defendant was detained for an unreasonable length of time, the warrant check was permissible, particularly when considered with the additional circumstance that when stopped defendant did not have in his possession a driver's license. The ascertainment by a police officer whether a person driving without a license has outstanding traffic warrants against him is a reasonable *189 police effort. (See Carpio v. Superior Court, supra, 19 Cal. App.3d 790, 793.)
(6a) Finally, with respect to the search and seizure, defendant contends that the searching officer should not have looked at the name on the credit card when it was taken from his pocket. A similar contention was rejected in People v. Balassy, 30 Cal. App.3d 614, 623 [106 Cal. Rptr. 461]. Although the primary purpose of a booking search is to keep contraband out of the jail facility, the jailer is also justified as part of the booking search to remove the prisoner's personal effects from him. (People v. Balassy, supra; People v. Superior Court, 30 Cal. App.3d 257, 263 [106 Cal. Rptr. 211]; People v. Rogers, 241 Cal. App.2d 384, 389 [50 Cal. Rptr. 559]; People v. Reed, 202 Cal. App.2d 575, 579-580 [20 Cal. Rptr. 911]; see § 1412; Gov. Code, § 26640.) Aside from determining whether such effects constitute contraband warranting their seizure, the jailer is authorized by statute to take money or property from the prisoner for purposes of safekeeping. (§ 1412; Gov. Code, § 26640.) (7) "Once articles have lawfully fallen into the hands of the police they may examine them to see if they have been stolen, test them to see if they have been used in the commission of a crime, return them to the prisoner on his release, or preserve them for use as evidence at the time of trial. [Citation.] During their period of police custody an arrested person's personal effects, like his person itself, are subject to reasonable inspection, examination, and test. [Citation.]" (People v. Rogers, supra, at pp. 389-390.)
(6b) Moreover, there is nothing unreasonable in police efforts to determine by inspection and investigation the true ownership of articles in their custody which they suspect to be stolen, particularly since they are prevented by the Penal Code from giving back suspected stolen property except on order of the magistrate. (§§ 1407, 1409; People v. Rogers, supra, 241 Cal. App.2d 384, 390.) In the instant case defendant was arrested and booked for robbery. Accordingly, the arresting and custodial officers could reasonably entertain a strong suspicion that fruits of the robbery were in defendant's possession.
(8a) When queried as to how he had obtained the credit card, defendant stated he did not know how it had gotten into his pocket. He contends that this statement was improperly admitted into evidence because the prosecution failed to affirmatively show that defendant knowingly and intentionally waived his Miranda (Miranda v. Arizona, 386 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) rights. As already noted, the officer testified that prior to the booking search he had read to defendant his Miranda rights.
*190 At the hearing pursuant to section 1538.5 the officer testified he had asked defendant "what is this?" and that defendant replied "I don't even know how it got there." Defense counsel made no objection to this line of questioning. In fact, on cross-examination, he sought to elicit further evidence as to the actual content of the statement. At the trial the same officer testified that defendant told him he did not know how the credit card got there. Defense counsel stipulated that defendant had been read his Miranda rights. Another officer who questioned defendant after the arrest testified that defendant told him he had found the credit card in a wallet on the corner of McAllister Street and Van Ness Avenue in San Francisco. This questioning took place after defendant was advised of his Miranda rights. This officer stated that he had asked defendant if he understood the rights and if, having those rights in mind, he wished to talk to the officer and that defendant had replied "Yes." No objection was made to the admission into evidence of these statements.
(9) There is abundant authority in this state that if there is no objection at the trial to the admission of a confession or of a statement obtained in violation of Miranda the defendant cannot raise the objection for the first time on appeal. (In re Dennis M., 70 Cal.2d 444, 462 [75 Cal. Rptr. 1, 450 P.2d 296]; People v. Peters, 23 Cal. App.3d 522, 529, 530 [101 Cal. Rptr. 403] [cert. den., 409 U.S. 1064 (34 L.Ed.2d 517, 93 S.Ct. 563)]; People v. Superior Court, 15 Cal. App.3d 146, 150, fn. 1 [92 Cal. Rptr. 916]; People v. Simms, 10 Cal. App.3d 299, 310 [89 Cal. Rptr. 1]; People v. Fontaine, 237 Cal. App.2d 320, 329 [46 Cal. Rptr. 855]; see Evid. Code, § 353.) (8b) We observe, moreover, that insofar as the second officer's questioning is concerned there is evidence from which the trial court could properly conclude that the response was voluntary and with full understanding of his rights. (10) The determination of this issue is primarily for the trial judge and his determination will not be disturbed by an appellate court unless it is palpably erroneous. (People v. Brockman, 2 Cal. App.3d 1002, 1008 [83 Cal. Rptr. 70]; People v. Inman, 274 Cal. App.2d 704, 708 [79 Cal. Rptr. 290].)
(11) Defendant makes the further claim that the admission of the credit card into evidence was unconstitutional because its admission was due solely to his indigency. His argument is that he was taken into custody because he was unable to post bail and that had he had the financial means to post bail the search would not have occurred. Accordingly, he asserts a discrimination based upon his indigency. Defendant cites no authority for this contention. He did not urge it at the section 1538.5 hearing or at trial, but is urging it for the first time on appeal.
*191 Assuming, arguendo, that defendant may raise this issue on appeal on the basis that it involves a basic constitutional question, we see no merit to the contention nor do we perceive the violation of any constitutional right. Defendant was subject to arrest on the basis of an outstanding warrant for his arrest. The officer was justified in arresting him on the warrant and placing him in jail pursuant to the warrant. The cases cited above do not hold that a defendant against whom there is an outstanding warrant may not be arrested, but merely that he may not be booked or searched without an opportunity being afforded him to post bail. (See People v. Collin, supra, 35 Cal. App.3d 416, 424; see Carpio v. Superior Court, supra, 19 Cal. App.3d 790, 793.) Under defendant's contention every defendant who is arrested and cannot post bail is discriminated against on the basis of indigency.
We observe that at common law bail was not a matter of right but a matter the granting or denial of which rested within the sound discretion of the court. (Carlson v. Landon, 342 U.S. 524, 545-546 [96 L.Ed. 547, 563-564, 72 S.Ct. 525]; In re Underwood, 9 Cal.3d 345, 349 [107 Cal. Rptr. 401, 508 P.2d 721].) It is not a right under the United States Constitution since the Eighth Amendment only provides that excessive bail shall not be required in those cases where it is proper. (Carlson v. Landon, supra; In re Underwood, supra.) In California our Constitution not only provides that bail not be excessive but also that persons shall be bailable by sufficient sureties except in capital cases. (Art. I, § 6.) We apprehend, therefore, that were it not for constitutional guaranty a person would not be bailable and that when he is bailable his bail shall be in accordance with such guaranty and the statutes implementing it. Both the federal and the California Constitution countenance that bail may be required in a proper case and neither make or authorize any distinction between a person financially able to raise such bail and one who is not able to do so because of his indigence.
(12) The purpose of bail is not to punish the defendant nor to protect the public safety, but to assure his presence in court when his presence is required, whether before or after conviction. (In re Underwood, supra, 9 Cal.3d 345, 348; see Sawyer v. Barbour, 142 Cal. App.2d 827, 833 [300 P.2d 187].) In view of this purpose a person's inability to give bail does not of itself entitle him to be discharged from custody. (In re Burnette, 35 Cal. App.2d 358, 360 [95 P.2d 684]; Ex parte Ruef, 7 Cal. App. 750, 752 [96 P. 24].)
In Moore v. City & County of San Francisco, 5 Cal. App.3d 728 [85 Cal. Rptr. 281], it was held that section 1295 providing for booking a *192 defendant anterior to his release on a deposit of cash bail on his arrest for a misdemeanor is not unconstitutional as violative of the Eighth Amendment or article I, section 6, of the California Constitution. Moore did not involve a traffic offense. In Collin we held that in a case involving a traffic offense the offender could not be booked or searched without first being afforded an opportunity to post bail and that when he indicated that he could not make bail there was no alternative but to take him into custody and to proceed with the booking process. (35 Cal. App.3d 416, 423-424.) The resultant search is not the direct result of the inability to post bail but a process incident to the booking necessitated by the fact that the defendant must be taken into custody in response to the warrant of arrest. Accordingly, we perceive no constitutional infirmity.
(13) A contention is made that the first degree robbery conviction is not sustained by substantial evidence in view of the jury's finding that it was not true that in the commission of the offense defendant used a firearm, to wit, a shotgun. Defendant contends that if he was guilty at all he could only be found guilty of second degree robbery.
As applicable to the facts of this case defendant could be found guilty of first degree robbery only if the robbery was perpetrated by him while armed with a deadly weapon. (§ 211a; People v. Tribble, 4 Cal.3d 826, 834 [94 Cal. Rptr. 613, 484 P.2d 589].) Defendant argues that since the jury found that he did not use a weapon in the commission of the robbery the jury must have believed that he was not armed with a deadly weapon.
Defendant was charged with robbery. (§ 211.) The information also charged that in the commission of the crime he used a firearm, to wit, a shotgun. The latter charge was made pursuant to section 12022.5 which, in pertinent part, provides: "Any person who uses a firearm in the commission ... of a robbery, ... upon conviction of such crime, shall, in addition to the punishment prescribed for the crime of which he has been convicted, be punished by imprisonment in the state prison for a period of not less than five years...."
The crime of robbery is divided into two degrees, i.e., first and second degree. (§ 211a.)[6] Robbery which is perpetrated by a person armed with a dangerous weapon is robbery of the first degree. Accordingly, on a charge of robbery the jury is required to determine the degree (§ 1157; People v. Cabral, supra, 198 Cal. App.2d 387, 390; People v. Kent, 90 *193 Cal. App.2d 77, 78 [202 P.2d 376]) and if it finds that the defendant committed the robbery and that he was armed with a deadly weapon it is justified in finding him guilty of first degree robbery. (§ 211a, People v. Villarico, 140 Cal. App.2d 233, 237 [295 P.2d 76]; People v. Rainey, 125 Cal. App.2d 739, 741 [271 P.2d 144].) If it also finds that he used such weapon in the commission of the robbery, then upon a special verdict so finding, the effect of the verdict is to increase the punishment as provided in section 12022.5. (People v. Chambers, 7 Cal.3d 666, 671-672 [102 Cal. Rptr. 776, 498 P.2d 1024]; People v. McDaniels, 25 Cal. App.3d 708, 714-715 [102 Cal. Rptr. 444].)
Contrary to defendant's assertion, the elements of use of a firearm during the commission of a crime, and being armed with a firearm are not the same. For purposes of a finding that defendant was armed with a firearm it is only necessary for the jury to believe that defendant had a firearm in his possession at the time the robbery took place because section 211a only requires that the perpetrator be "armed." (See People v. Rostamo, 249 Cal. App.2d 983, 988 [58 Cal. Rptr. 74]; People v. Dozie, 224 Cal. App.2d 474, 477 [36 Cal. Rptr. 728]; People v. Hall, 105 Cal. App. 359, 361 [287 P. 533].) For purposes of the use allegation the jury must have believed not only that defendant possessed the firearm, but also that he fired it, brandished it or threatened the victim with it, because use requires something more than that the offense be committed "while armed." (People v. Chambers, supra, 7 Cal.3d 666, 672-674; People v. Washington, 17 Cal. App.3d 470, 474 [94 Cal. Rptr. 882] [overruled on other grounds, People v. Najera, 8 Cal.3d 504, 509 (105 Cal. Rptr. 345, 503 P.2d 1353)].) "Thus, while anyone who uses a firearm must necessarily be armed with it the converse need not be true." (People v. Washington, supra.)
In the present case the evidence was such that the jury could have believed that defendant was holding a shotgun during the robbery but that he did not brandish it or threaten the victim with it. The victim testified that defendant had the shotgun cradled over his arm, kept the shotgun on him, and had his finger on the trigger.[7] There is ample evidence to support a finding that defendant was armed during the commission of the robbery.
*194 We are not concerned here with separate counts resulting in inconsistent verdicts because rendered on charges wherein the elements of the offenses charged are identical. Section 12022.5 does not, in itself, prescribe an offense but merely provides an additional punishment for an offense in which a firearm is used (People v. Henry, 14 Cal. App.3d 89, 92 [91 Cal. Rptr. 841]) even though the use of the weapon is an element of the offense charged. (People v. Hayden, 30 Cal. App.3d 446, 450 [106 Cal. Rptr. 348].)
(14a) Finally, we consider the contention that the prosecutor was guilty of prejudicial misconduct. The alleged misconduct took place during the prosecutor's closing argument to the jury. The prosecutor, upon stating that the robber told the victim that if he identified the robber the victim had "better get a different job" and had "better disappear," noted that defendant was smiling. The prosecutor stated: "The defendant thinks it's funny. Nobody was pointing a gun at him." No objection was made to this statement, nor was any request made for an admonition.
(15) Ordinarily, prosecutorial misconduct must be objected to and an admonition must be requested at trial before it will be ground for reversal of a judgment (People v. Chojnacky, 8 Cal.3d 759, 765 [106 Cal. Rptr. 106, 505 P.2d 530]; People v. Perry, 7 Cal.3d 756, 790 [103 Cal. Rptr. 161, 499 P.2d 129]; People v. Berryman, 6 Cal.2d 331, 337 [57 P.2d 136].) The purpose of this is to give the trial court the opportunity to neutralize the effect of any misconduct at trial, and thus to avoid a reversal on appeal. But if the case is one which is closely balanced or a grave doubt of the defendant's guilt is presented or if the misconduct was so prejudicial that a jury instruction could not obviate its effect, the objection and request for an admonition are not necessary. (People v. Chojnacky, supra; People v. Perry, supra; People v. Perez, 58 Cal.2d 229, 247 [23 Cal. Rptr. 569, 373 P.2d 617, 3 A.L.R.3d 946]; People v. Berryman, supra.)
(16) Prosecutorial misconduct implies "`a dishonest act or an attempt to persuade the court or jury, by use of deceptive or reprehensible methods.'" (People v. Chojnacky, supra, 8 Cal.3d 759, 766; People v. Beivelman, 70 Cal.2d 60, 75 [73 Cal. Rptr. 521, 447 P.2d 913].) In this case the prosecutor's comment did not constitute such conduct but was merely a comment directed to defendant's sense of humor. (14b) In any event, at worse, we deem it to fall in the category of misconduct the harmful effect of which could have been obviated by a proper objection and a requested admonition. Moreover, this case was not a closely balanced case or one in which there is grave doubt of defendant's guilt. There was ample evidence to show defendant participated in the robbery. The robbery victim positively *195 identified defendant both from a group of photographs shown him prior to trial and at the trial itself, and the credit card taken from the victim during the robbery was found in defendant's possession. It is unlikely that a result more favorable to defendant would have been reached absent the alleged misconduct of the prosecutor, and a reversal on this ground would not be warranted. (People v. Watson, 46 Cal.2d 818, 836 [299 P.2d 243].)
The judgment is affirmed.
Elkington, J., concurred.
NOTES
[1] Unless otherwise indicated all statutory references are to the Penal Code.
[2] No petition for a hearing in the Supreme Court was filed.
[3] In each of these cases a petition for hearing in the Supreme Court was denied.
[4] No petition for a hearing in the Supreme Court was filed.
[5] There was testimony in the present case that it was department policy to run a warrant check on each and every person with whom an officer comes in contact.
[6] It is not necessary to charge the degree of the crime in the information. (People v. Burns, 270 Cal. App.2d 238, 254 [75 Cal. Rptr. 688]; People v. Cabral, 198 Cal. App.2d 387, 390-391 [17 Cal. Rptr. 896].)
[7] The trial judge noted in his opinion there was ample evidence to find that defendant used the shotgun. (See People v. Chambers, supra, 7 Cal.3d 666, 672-673.) In finding that defendant did not use the shotgun the jury may have expressed a desire to treat defendant leniently. (People v. De Priest, 2 Cal. App.3d 423, 431 [82 Cal. Rptr. 526].)