[Crim. No. 33763. Second Dist., Div. Five. Apr. 24, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
LISA BULLWINKLE, Defendant and Appellant.

[Crim. No. 34931. Second Dist., Div. Five. Apr. 24, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD JOHN BULLWINKLE, JR., Defendant and Appellant.

COUNSEL

Michael J. Treman, under appointment by the Court of Appeal, Quin Denvir, State Public Defender, Charles M. Sevilla, Chief Assistant State Public Defender, and Robert P. App, Deputy State Public Defender, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, John R. Gorey and Sandy R. Kriegler, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ASHBY, J.—Appellants Lisa and Edward Bullwinkle were charged jointly and individually on a total of 15 counts of burglary, receiving stolen property, and writing checks with insufficient funds. (Pen. Code, §§ 459, 496, 476a.) Following denial of their motions under Penal Code sections 995 and 1538.5, Lisa pled guilty to four counts of receiving stolen property and was sentenced to state prison. Edward pled guilty to two counts of receiving stolen property and by jury trial was convicted of two additional counts of receiving stolen property and one count of burglary, and was sentenced to state prison.

The primary issue on both appeals is the legality of a search of Lisa's purse after she was arrested for writing checks with insufficient funds, which search led to the obtaining of the evidence of stolen property involved in both appellants' convictions. Edward separately raises issues as to his motion for new trial and his sentence.

The motion under Penal Code section 1538.5 was based on the transcript of the preliminary hearing and additional testimony. ■ On appeal we must view the evidence at the preliminary hearing and section 1538.5 hearing in the light most favorable to the trial court's ruling, resolving all conflicts in the evidence in favor of the judgment. (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621]; *People* v. *West* (1970) 3 Cal.3d 595, 602 [91 Cal.Rptr. 385, 477 P.2d 409].) Stated in this light, the facts surrounding the search are as follows: On March 3, 1978, Santa Barbara Police Officers Wat-

son and Alpert arrested appellants at their home on an arrest warrant for writing checks with insufficient funds. Appellants were arrested in the living room. Lisa desired to go upstairs to the bedroom to get some clothing to take with her to jail, and was permitted to do so. Upon being asked whether she wished to take her purse, she reached down to the floor and picked it up. Then she handed it to Officer Watson or he took it from her. Watson handed the purse to Alpert. Officer Alpert checked the purse for weapons and happened to observe checkbooks inside, but did not otherwise search it at this time. The officers kept the purse in their possession while appellants were transported to the police department.

After arriving at the police department, Officer Alpert emptied the purse onto his desk and searched through the contents. He was looking for evidence relevant to the check writing charges for which appellants were arrested, such as checks, checkbooks, and identification papers.

At that moment, Officer Rogers of the burglary detail passed by, and upon observing a photograph of Edward among the contents of the purse, recognized Edward as resembling an artist's composite drawing of a suspect he was investigating for burglary of a photographic equipment store, as well as other crimes. He commented on this to Officer Alpert, who then pointed out that the purse contained papers with lists of cameras and their serial numbers. Upon verifying that the listed items were among the property stolen from the photographic equipment store and comparing the artist's composite drawing of the burglary suspect, Officer Rogers obtained a search warrant for the search of appellants' house, which resulted in the seizure of numerous items of stolen property leading to the convictions in the instant case.

### SEARCH OF PURSE

Appellants contend that the search of the contents of Lisa's purse at the police station was unlawful because it was conducted without a warrant. Appellants point out that the police took custody of the purse at appellants' house, and they argue that once the purse had been reduced to the exclusive control of the police there was no danger that Lisa could destroy evidence in it or seize a weapon from it and that therefore no justification existed for dispensing with the requirement of a warrant. They cite such cases as *United States* v. *Chadwick* (1977) 433 U.S. 1, 15 [53 L.Ed.2d 538, 550, 97 S.Ct. 2476]; *Arkansas* v.

*Sanders* (1979) 442 U.S. 753, 763-764 [61 L.Ed.2d 235, 245, 99 S.Ct. 2586]; *People v. Minjares* (1979) 24 Cal.3d 410, 420-423 [153 Cal. Rptr. 224, 591 P.2d 514]; *People v. Dalton* (1979) 24 Cal.3d 850, 855-856 [157 Cal.Rptr. 497, 598 P.2d 467]; and *People v. Pace* (1979) 92 Cal.App.3d 199, 202-204 [154 Cal.Rptr. 811].

These cases are inapplicable here, because Lisa was under arrest for a felony and her purse would properly have been subject to search in the course of booking her into the jail. It has long been the rule that the police may search the person and the effects of a prisoner who is to be booked into jail, in order to prevent the introduction of contraband or weapons into the jail and in order to account for and safeguard the property taken from the prisoner. (*United States v. Edwards* (1974) 415 U.S. 800, 804-805 & fn. 6, 807 [39 L.Ed.2d 771, 776-777, 94 S.Ct. 1234]; *People v. Ross* (1967) 67 Cal.2d 64, 70 [60 Cal.Rptr. 254, 429 P.2d 606] [revd. on other grounds *sub nom. Ross v. California* (1968) 391 U.S. 470 (20 L.Ed.2d 750, 88 S.Ct. 1850)]; *People v. Maher* (1976) 17 Cal.3d 196, 200-201 [130 Cal.Rptr. 508, 550 P.2d 1044]; *People v. Rogers* (1966) 241 Cal.App.2d 384, 389 [50 Cal.Rptr. 559]; *People v. Superior Court (Murray)* (1973) 30 Cal.App.3d 257, 263 [106 Cal.Rptr. 211]; *People v. Balassy* (1973) 30 Cal.App.3d 614, 623 [106 Cal.Rptr. 461]; *People v. Gilliam* (1974) 41 Cal.App.3d 181, 189 [116 Cal.Rptr. 317]; *People v. Remiro* (1979) 89 Cal.App.3d 809, 835 [153 Cal.Rptr. 89]; Pen. Code, § 1412; Gov. Code, § 26640.)

Where it is shown that a suspect would have been jailed and thus subject to a booking search, the fact that a thorough search of the booking type occurs prior to the actual booking process does not render the search illegal, since no additional or greater intrusion on the privacy of the suspect is involved. (*People v. Barajas* (1978) 81 Cal.App.3d 999, 1008-1009 [147 Cal.Rptr. 195]; *People v. Flores* (1979) 100 Cal. App.3d 221, 229-230 [160 Cal.Rptr. 839]; see *People v. Superior Court (Simon)* (1972) 7 Cal.3d 186, 208-209 [101 Cal.Rptr. 837, 496 P.2d 1205]; *People v. Longwill* (1975) 14 Cal.3d 943, 948 [123 Cal. Rptr. 297, 538 P.2d 753]; *People v. Brown* (1979) 88 Cal.App.3d 283, 293 [151 Cal.Rptr. 749].)

■ In cases where the police have available some statutory alternative to jailing the suspect, as with certain Vehicle Code violations,

misdemeanors (see Pen. Code, § 853.6), or intoxication (see Pen. Code, § 849, subd. (b)(2), (3)), the validity of a so-called "accelerated" booking search will depend upon a factual showing by the People that the suspect would have been subjected to the booking process. (*People v. Barajas, supra,* 81 Cal.App.3d at p. 1009.) But that is not the case in felony arrests, where jailing is the normal result. (*Id.,* at pp. 1009-1010; see also *People v. Flores, supra,* at p. 230.) Here, Lisa was under arrest for writing checks with insufficient funds, a felony,[1] and no further showing that she would have been subjected to booking is necessary. (*People v. Barajas, supra.*)

 Appellants contend that assuming Lisa would have been jailed, a booking search should be limited to a search of her person and items worn on her person, and should not extend to her purse, because theoretically the purse could have been kept out of jail facilities without being opened. There is no merit to this argument. Booking searches have traditionally been thought to extend to a purse (see *People v. Rhodes* (1972) 23 Cal.App.3d 257, 258 [100 Cal.Rptr. 487]; *People v. Blatt* (1972) 23 Cal.App.3d 148, 152 [99 Cal.Rptr. 855]; *People v. Brown, supra,* 88 Cal.App.3d 283, 293), as well as a wallet (see *People v. Balassy, supra,* 30 Cal.App.3d 614, 623; *People v. Tennessee* (1970) 4 Cal.App.3d 788, 792 [84 Cal.Rptr. 697]). Appellants' argument overlooks the fact that the purposes of a booking search include not only to prevent contraband and weapons from entering the jail, but also to account for the valuables and other property of the prisoner, which the police are mandated by statute to do. (Pen. Code, § 1412; Gov. Code, § 26640.)[2] Such a search is not like the inventory of the contents of an

---

[1]Violation of Penal Code section 476a is punishable alternatively as a misdemeanor or a felony. So far as the police were concerned, it was a felony, since none of the events which could render it a misdemeanor was subject to police discretion. (Pen. Code, § 17, subd. (b).)

[2]Penal Code section 1412 provides: "When money or other property is taken from a defendant, arrested upon a charge of a public offense, the officer taking it must at the time give duplicate receipts therefor, specifying particularly the amount of money or the kind of property taken; one of which receipts he must deliver to the defendant and the other of which he must forthwith file with the clerk of the court to which the depositions and statement are to be sent. When such property is taken by a police-officer of any incorporated city or town, he must deliver one of the receipts to the defendant, and one, with the property, at once to the clerk or other person in charge of the police-office in such city or town."

Government Code section 26640 provides: "The sheriff shall take charge of, safely keep, and keep a correct account of, all money and valuables found on each prisoner when delivered at the county jail. Except when otherwise ordered by a court of competent jurisdiction, the sheriff shall pay such money or sums therefrom and deliver such

automobile disapproved in *Mozzetti v. Superior Court* (1971) 4 Cal.3d 699, 708-710 [94 Cal.Rptr. 412, 484 P.2d 84]. The duty to account for the valuables and property taken from a prisoner upon jailing is specifically mandated by statute, and appears to be greater than the duty of slight care or ordinary care which *Mozzetti* held was owed toward impounded automobiles. A purse is precisely the place where the money and valuables contemplated by the statutes would normally be found. Viewing the facts most favorably to the judgment, Lisa, knowing that she was about to be taken to jail, chose to take her purse. She had no reasonable expectation that she could take it to jail without its contents being examined. Moreover, purses and wallets are entirely different from automobiles. The contents of automobiles "may be readily and adequately protected by locking the vehicle." (*Mozzetti v. Superior Court, supra*, 4 Cal.3d at p. 709.) The contents of purses and wallets, on the other hand, are easily susceptible to theft since purses and wallets cannot normally be locked. (*People v. Morton* (1971) 21 Cal. App.3d 172, 175 [98 Cal.Rptr. 261], distinguishing *Mozzetti*.) While it would be difficult to steal the contents of a locked automobile, the contents of a purse could easily be taken or lost, even en route from the booking area to a property room or locker. The inventorying of a prisoner's valuables and effects has always been thought one of the proper purposes of a booking search, both before and after *Mozzetti*. (*People v. Maher, supra*, 17 Cal.3d 196, 200-201.) Appellants' argument that the governmental interests in preserving the contents of the purse can be satisfied by placing the purse unopened into some kind of property room or property locker is not persuasive.

■ Appellants argue that the People's accelerated booking-search theory was not articulated in the trial court and may not be urged for the first time on appeal, citing *People v. Superior Court (Simon), supra*, 7 Cal.3d 186, 198; *People v. Miller* (1972) 7 Cal.3d 219, 227 [101 Cal.Rptr. 860, 496 P.2d 1228]; *Mestas v. Superior Court* (1972) 7 Cal. 3d 537, 542 [102 Cal.Rptr. 729, 498 P.2d 977], and *Agar v. Superior Court* (1971) 21 Cal.App.3d 24, 28-29 [98 Cal.Rptr. 148]. However, in this case appellants are not prejudiced by the People's failure to articulate this theory below. The purpose of the rule preventing the People from relying upon a new theory on appeal in the above cases is to give the defendant a fair opportunity to cross-examine prosecution witnesses

valuables or portions thereof as the prisoner directs and shall pay and deliver all the remainder of his money and valuables to the prisoner or to his order upon his release from the jail or to his legal representative in case of his death or insanity."

and to adduce evidence of his own to rebut the new theory. (*People* v. *Sirhan* (1972) 7 Cal.3d 710, 736-737 [102 Cal.Rptr. 385, 497 P.2d 1121].) In the cases cited by appellants the People had failed to establish in the trial court that as a factual matter the police officer entertained a belief that a crime other than the one for which the defendant was arrested had also been committed.

Here, on the other hand, the validity of an accelerated booking search does not depend upon facts which might have been contested had the matter been raised earlier. Since Lisa's arrest was for a felony, no factual showing that she actually would have been booked is involved. (*People* v. *Barajas, supra*, 81 Cal.App.3d 999, 1009-1010.) Unlike the cases cited by appellants, the validity of an accelerated booking search does not require the police officer's subjective belief that he is actually conducting a booking search, nor would it be negatived by the officer's express concession, as in this case, that he was not conducting a booking search. The theory is that the privacy of the prisoner and her effects would have been invaded anyway, and that therefore no greater intrusion on that privacy occurs when the search is conducted other than during the booking process. Finally, the validity of a booking search of this type should not hinge upon distinctions as to the particular facilities for prisoner-property storage at particular police stations or jails. As we have discussed, the statutory duties imposed upon the police to account for and safeguard a prisoner's property, and the easy susceptibility of a purse to theft of its contents, justify inventorying its contents even in stations where individual property lockers might be available.[3] Thus we see no way in which appellants were prejudiced by the People's raising this argument on appeal. (*People* v. *Sirhan, supra*, 7 Cal.3d at p. 737.) In these circumstances, where the record shows the search was lawful, it is our duty to uphold the trial court's ruling, even if upon a theory not articulated below. (See Cal. Const., art. VI, § 13; Pen. Code, §§ 1258, 1404; Code Civ. Proc., § 475.)[4]

---

[3]We are aware of the recent decision in *People* v. *Smith* (1980) 103 Cal.App.3d 840 [163 Cal.Rptr. 322], but find it distinguishable. There, *after* the defendant's purse had been subjected to a booking search and then placed in a property locker, an officer removed the purse and conducted a *second* search the following day, which the People sought to uphold on a booking search theory. The court held that once a booking search had been conducted and the property placed in storage, a warrant (or additional exception to the warrant requirement) was necessary for another search. The court expressly declined to decide whether the initial booking search required a warrant.

[4]Appellants also contend the search was illegal on the ground that the original arrest was unlawful due to inaccuracies in the affidavit for the arrest warrants. Officer Watson concluded in his affidavit that appellants had "issued numerous checks that were

## Motion for New Trial

■ Edward contends that the trial court erred in denying his motion for new trial based upon misconduct of a juror.

Appellants' friend Brian Burch was present at appellants' apartment when the police arrested appellants. He was called as a witness by the prosecution, but generally denied any recollection of having observed expensive photographic and electronic equipment in the apartment. In response to a question about whether appellants had a motor vehicle, Burch commented that he did not know, but that he, Burch, drove when he and appellants would go swimming at the Coral Casino, where appellants were members.

On Edward's motion for new trial it was proved by the affidavits of four jurors that one juror, in violation of her duties, went to the Coral Casino and was informed that appellants were not members but that a relative of appellants was.

There is no dispute that the juror committed misconduct, and that misconduct by a juror creates a rebuttable presumption of prejudice. (See *People* v. *Honeycutt* (1977) 20 Cal.3d 150, 156 [141 Cal.Rptr. 698, 570 P.2d 1050]; *People* v. *Pierce* (1979) 24 Cal.3d 199, 207 [155 Cal.Rptr. 657, 595 P.2d 91].) However, the presumption of prejudice may be rebutted by the record. (See *People* v. *Martinez* (1978) 82 Cal. App.3d 1, 22-25 [147 Cal.Rptr. 208].)

---

returned 'NSF' or 'Account Closed.'" Appellants argue this was technically incorrect because the checks were not physically stamped "NSF" or "Account Closed" nor physically returned to the stores who were the named payees. This was because appellants had check guarantee cards from the bank. The check guarantee cards were not a credit device under which the bank extended credit to appellants for overdrafts in the accounts; rather the bank had an agreement with the merchants involved, that the bank would honor checks presented with the check guarantee cards. Therefore the bank was going to have to honor the checks in favor of the merchants. The bank, rather than the merchants, would be the ultimate victim. The facts nevertheless showed that appellants were writing checks with insufficient funds in their accounts to cover them. As the trial court found, the officer's language in the affidavit may have been technically imprecise, but this was not the type of error which requires quashing the warrant or excising information from it. Interpreted in a commonsense, rather than a hypertechnical, fashion, the affidavit supported issuance of the arrest warrant. (*United States* v. *Ventresca* (1965) 380 U.S. 102, 108-109 [13 L.Ed.2d 684, 688-689, 85 S.Ct. 741]; *People* v. *Mesa* (1975) 14 Cal.3d 466, 469 [121 Cal.Rptr. 473, 535 P.2d 337].)

In this case the trial court found the presumption of prejudice was rebutted by the record, and we agree.

As the trial court found, the testimony of Brian Burch contributed nothing to Edward's convictions. His testimony as to the Coral Casino was irrelevant to any issue in the case. The result of the juror's independent investigation was not such as to adversely affect the jurors' impartiality, lighten the prosecution's burden of proof, or contradict any asserted defense. The record shows that Edward could not have been prejudiced by the misconduct. (See *People v. Martinez, supra.*)

## SENTENCE

■ Edward was sentenced on one count of burglary and was given consecutive sentences on the remaining four counts of receiving stolen property. He contends that since the stolen property was all discovered at his apartment on the same date, he cannot be subjected to multiple punishment on the various counts of receiving stolen property, citing *People v. Lyons* (1958) 50 Cal.2d 245, 275 [324 P.2d 556].

Under *Lyons*, if the evidence shows that goods stolen from different sources were received on a single occasion, there is but one offense of receiving stolen property. However, this rule is inapplicable when there is evidence from which the jury might infer that the goods were not received at the same time or in the same transaction. (*People v. Roberts* (1960) 182 Cal.App.2d 431, 437 [6 Cal.Rptr. 161].) In this case, the record reasonably supports the inference that appellant received the various stolen goods at different times and in different transactions. The burglaries during which the goods were stolen occurred at widely separated times. The Browne burglary occurred in May 1975. The Circon burglary occurred around December 1, 1975. The National Photo burglary involved in count VI occurred January 10, 1976. The B & K Industries burglary was in January 1978.

## CREDIT ON SENTENCES

Both appellants contend they are entitled to additional credit on their sentences for good time/work time. Under the recent California Supreme Court decision in *People v. Sage* (1980) 26 Cal.3d 498, 507 [162 Cal.Rptr. 450, 606 P.2d 757], appellants are entitled to such conduct credit if earned.

The judgments are affirmed and the causes are remanded to the trial court for determination of the conduct credit to which appellants are entitled.

Stephens, Acting P. J., and Hastings, J., concurred.

Petitions for a rehearing were denied May 21, 1980, and appellants' petitions for a hearing by the Supreme Court were denied June 25, 1980. Bird, C. J., and Mosk, J., were of the opinion that the petitions should be granted.