[Crim. No. 4251. Fourth Dist., Div. One. June 24, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
VIRGINIA ALICE MUNSEY, Defendant and Appellant.

**COUNSEL**

Roger C. Crobarger, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Diana C. Woodward, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**WHELAN, J.**—Virginia Alice Munsey (defendant) appeals from an order granting probation upon her plea of guilty to the possession of restricted dangerous drugs, in violation of Health and Safety Code section 11910, after her motion under Penal Code section 1538.5 had been denied.

A second charge of violating Vehicle Code section 23106 was dismissed when she pleaded guilty to the first count.

At approximately 2:35 a.m. on August 17, 1969, as a California Highway Patrol vehicle was being driven southerly on Interstate 5 by Officer McDermott (McDermott), who was accompanied by Officer Roger Leon Nezet (Nezet), the vehicle was passed by a southbound car driven by defendant in the traffic lane to the left of the patrol vehicle.

In passing the patrol vehicle, defendant's car traveled at a speed of 70 miles per hour. Defendant's car, drawing up behind another car in the same lane, moved therefrom into the same lane as the patrol vehicle and contined on, gaining speed until it was going at 75 to 78 miles per hour; it also weaved from one side to another of the traffic lane from two to five times.

The prima facie speed limit in that section of the freeway was 65 miles per hour.

McDermott started to pick up speed to overtake defendant's car, which then slowed to 70 miles per hour, and then was brought to a gradual stop in response to McDermott's signalling for a halt.

The two officers alighted and approached defendant's car, McDermott on the right, Nezet on the driver's side.

Nezet saw that defendant's eyes were very bloodshot. He asked her to get out and had her walk a short distance; her gait was unsteady. Her speech was blurred and difficult to understand; she was hesitant in speaking. He administered several coordination and reaction tests, in all of which she did poorly, and in two of which she did very badly.[1]

Nezet was unable to detect any odor of alcohol about defendant's person. The only passenger in defendant's car had "no odor of alcohol, was extremely lethargic, his speech was almost mumbling . . ." Nezet said he seemed to be under the extreme influence of a narcotic or something similar. A radio exchange from the scene brought information there was a warrant out for the passenger's arrest on a charge of violating "11910."[2] He was placed under arrest.

Nezet had been a highway patrol officer for five years and had administered sobriety tests between one hundred and two hundred times.

He formed the opinion that defendant was under the influence of some intoxicant other than alcohol.

Nezet's only special training in the area of recognizing a person under the influence of narcotics was limited to a few hours relating to narcotics at the California Highway Patrol Academy, and training at the Sheriff's Academy.

---

[1]Officer Nezet administered four roadside coordination tests to defendant, demonstrating each of them to her before asking her to perform them. Defendant did not do too badly on the "normal walk" test. However, she had extreme difficulty with the "heel and toe test" because she "kept getting her feet tangled up." She attempted to perform that test three times, but she kept getting her feet extremely gapped and she finally told the officer, "I can't do that." In performing the "stand on one foot" test, defendant was only able to stand on one foot for one second before she would start falling to her left. For the fourth test, the "finger-to-nose test," defendant was instructed by the officer to stand with her arms extended, her head back, and her eyes closed. As she stood in this position her body swayed sideways more than was normal and although she attempted to touch her finger to her nose twice with each hand she was not able to accomplish the test.

[2]Health and Safety Code section 11910, for possession of restricted dangerous drugs.

He had no information prior to arresting defendant that she was addicted to or a user of narcotics.

Nezet would have interrogated defendant but was told by her something about wanting to talk to her three lawyers, and did not question her other than to ask which of three chemical tests she would submit to. She expressed a preference.

She was then placed under arrest for a violation of Vehicle Code section 23105, carried to a hospital where the test was administered, and then taken to jail where she was booked on the charge for which she had been arrested. There she was searched by jail matrons and three plastic bags were removed from her brassiere. One contained 40 capsules of Seconal, a barbiturate; the second contained 34½ amphetamine pills; the third contained one large amphetamine pill and three unidentified pills.

██ Defendant contends there was no probable cause to arrest her for a violation of section 23105[3] or section 23106[4] of the Vehicle Code; that there might have been cause to arrest for a violation of section 23102, subdivision (a)[5] of the Vehicle Code, but that if there was probable cause to arrest for a violation of either section 23102, subdivision (a) or section 23106, defendant could not lawfully have been subjected to a search of her person on a charge of either of such violations.

---

[3]Vehicle Code section 23105 is as follows: "It is unlawful for any person who is addicted to the use, or under the influence, of narcotic drugs or amphetamine or any derivative thereof to drive a vehicle upon any highway. Any person convicted under this section is guilty of a felony and upon conviction thereof shall be punished by imprisonment in the state prison for not less than one year nor more than five years or in the county jail for not less than 90 days nor more than one year or by a fine of not less than two hundred dollars ($200) nor more than five thousand dollars ($5,000) or by both such fine and imprisonment."

[4]Vehicle Code section 23106 is as follows: "It is unlawful for any person under the influence of any drug, other than a narcotic or amphetamine or any derivative thereof, to a degree which renders him incapable of safely driving a vehicle, to drive a vehicle upon any highway. Any person convicted under this section is guilty of a misdemeanor and shall be punished by imprisonment in the county jail not to exceed one year or by a fine of not to exceed five hundred dollars ($500) or both."

[5]Vehicle Code section 23102, subdivision (a) reads in part as follows: "It is unlawful for any person who is under the influence of intoxicating liquor, or under the combined influence of intoxicating liquor and any drug, to drive a vehicle upon any highway. Any person convicted under this section shall be punished upon a first conviction by imprisonment in the county jail for not less than 30 days nor more than six months or by fine of not less than two hundred fifty dollars ($250) nor more than five hundred dollars ($500) or by both such fine and imprisonment and upon a second or any subsequent conviction, within seven years of a prior conviction, by imprisonment in the county jail for not less than five days nor more than one year and by a fine of not less than two hundred fifty dollars ($250) nor more than one thousand dollars ($1,000). A conviction under this section shall be deemed a second conviction if the person has previously been convicted of a violation of Section 23101 of this code."

The core of defendant's argument as to lack of probable cause to arrest is the claimed lack of evidence of Nezet's competency to form an opinion defendant was under the influence of a narcotic or of an amphetamine or any other drug.

Defendant places much reliance upon *Reinert* v. *Superior Court,* 2 Cal. App.3d 36 [82 Cal.Rptr. 263], in which the Court of Appeal directed the superior court to set aside an information based upon the reception into evidence of marijuana found in a search incident to an arrest for a violation of Penal Code section 647, subdivision (f), which was held to have been made without probable cause because the arrest was based upon the defendant's condition when found in bed in his own home.[6]

We find no difficulty in distinguishing the facts in this case from those in *Reinert* in another respect.

---

[6]In *Reinert,* the court said, at page 39: "The petitioner was initially arrested without a warrant for a violation of section 647, subdivision (f) of the Penal Code. . . . At the time of the arrest the petitioner was in bed in his apartment and not in a public place. Therefore the arrest for a violation of section 647, subdivision (f) was unlawful [citation]. Accordingly, the search of the premises here involved cannot be justified by the initial arrest for a violation of section 647, subdivision (f)."

The Court of Appeal then discussed the People's contention, made for the first time before that court, that the arresting officer had probable cause to arrest Reinert for possession of restricted dangerous drugs because, upon seeing Reinert in bed under the covers in his own apartment, the officer noticed that his eyes were dilated, that when he spoke to the officer his voice was thick, and the officer could not smell anything on his breath, from which the officer concluded Reinert was under the influence of a dangerous drug.

The court observed that no tests were conducted by the arresting officer to corroborate his opinion, and that he did not ask any questions prior to the arrest to determine the cause of Reinert's physical condition.

The court stated: "No attempt was made by the People to qualify Officer Lopez as an expert on the objective symptoms of drug use. Nor is there any evidence in the record before us to establish the symptoms of a person who is under the influence of a restricted drug. This condition is not a matter of generalized knowledge that is so universally known that it cannot reasonably be the subject of dispute. Therefore, it cannot be the subject of judicial notice (Evid. Code, § 451)." (*Reinert* v. *Superior Court, supra,* 2 Cal.App.3d 36, 40.)

Finally, the court said, at page 42: "The People did not attempt to justify the search *before the magistrate* on the theory that the officer has reasonable grounds to arrest the petitioner for a violation of section 11910 of the Health and Safety Code. The only evidence presented to the magistrate to justify the search concerned the informer's report and the arrest for a violation of Penal Code, section 647, subdivision (f). Before this court the People have conceded that these two theories are legally insufficient to justify the search and seizure. However, the People now ask us to consider a third theory which was not presented to the magistrate. To permit the People to inject this new theory into the case would deprive the petitioner of a fair opportunity to present an adequate record in response. The petitioner was entitled to assume that the justification for the search was presented before the magistrate. He had no opportunity to mount a legal attack on the theory advanced for the first time before this court, nor to present evidence on cross-examination to rebut the factual basis underlying the additional justification for the search . . ."

The arresting officer in *Reinert* went to the apartment on his own initiative after receiving information that Reinert had been trafficking in marijuana.

In the case at bench the police had no preconceived idea about defendant. She was stopped because of a speeding violation, attended by circumstances suggesting a lack of control over the vehicle. The phenomena exhibited by defendant to Nezet were those of an intoxicated person, and no doubt the most common cause in the experience of police was alcoholic intoxication.

Nezet was competent to form an opinion as to whether defendant was intoxicated.

■ Opinion evidence as to intoxication is not limited to expert testimony, but is a matter about which any witness may express an opinion. (*People* v. *Ravey,* 122 Cal.App.2d 699, 703 [265 P.2d 154]; *People* v. *Clark,* 106 Cal.App.2d 271, 279 [235 P.2d 56]; *People* v. *Hernandez,* 70 Cal.App.2d 190, 192 [160 P.2d 564]; *People* v. *Monteith,* 73 Cal. 7, 9 [14 P. 373].)

■ Nezet's opinion that defendant was under the influence of something (Nezet did not know what) reasonably envisaged the possibility defendant was under the influence of intoxicating liquor, a matter concerning which he was competent to testify, without experiential training. Defendant, however, had no odor of alcohol about her and Nezet thought questioning her as to what she had been taking would have been improper after her mention of her attorneys.

The probability that defendant's condition was produced by alcohol having been tentatively eliminated, it became reasonable to entertain and hold a strong suspicion that defendant was under the influence of a narcotic.

In *People* v. *Ingle,* 53 Cal.2d 407, 412, 414 [2 Cal.Rptr. 14, 348 P.2d 577], the court declared: "Each case must be decided on its own facts and circumstances [citations]—and on the total atmosphere of the case. [Citations.] Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citations.] . . .

". . . . . . . . . . . . . . . . . . .

"Unless it can be said that prudent men in the position of these officers knowing what they knew and seeing what they did would not have had reasonable cause to believe and to conscientiously entertain a strong

suspicion that Ingle was violating or had violated the law, the arrest should be held lawful."

Upon the theory the evidence was insufficient to show probable cause to arrest for a violation of Vehicle Code section 23105, punishable as a felony, defendant bases her claim the search of her person was unreasonable and unlawful, and her incarceration unauthorized.

This court, in *People* v. *Dukes,* 1 Cal.App.3d 913 [82 Cal.Rptr. 218], held a search of the person incident to an arrest for a misdemeanor traffic violation was unreasonable, because a person arrested for such an offense might legally be detained only long enough to have bail fixed and to furnish such bail (Veh. Code, § 40302, subd. (d)), eliminating the necessity for a search at the jail.[7] In *Dukes,* the search was at the scene of an arrest made because the driver of a vehicle engaged in a minor traffic violation lacked satisfactory identification. The search disclosed marijuana.

The search in the case at bench was made of the person of one arrested on a felony charge, so that the *Dukes* rule has no application if there was probable cause to arrest on that charge.

Another point of distinction is that although defendant here was stopped originally on a traffic violation, which by itself would not have justified an arrest, the subsequent observations of Nezet led him to believe that she had been driving under the influence of a narcotic.

Under such circumstances a search may be reasonable for the purpose of obtaining possible evidence of the very crime for which the arrest is made. (See *People* v. *Woods,* 139 Cal.App.2d 515, 525 [293 P.2d 901]; see also *People* v. *Yniguez,* 15 Cal.App.3d 669, 673 [93 Cal.Rptr. 444].)

 Alcoholic intoxication on the part of a defendant may justify his detention in jail until its effects disappear even when he is able to give bail. (*Evans* v. *Municipal Court,* 207 Cal.App.2d 633, 636 [24 Cal.Rptr.

---

[7]"Whenever any person is arrested for any violation of this code, not declared to be a felony, the arrested person shall be taken without unnecessary delay before a magistrate within the county in which the offense charged is alleged to have been committed and who has jurisdiction of the offense and is nearest or most accessible with reference to the place where the arrest is made in any of the following cases:

". . . . . . . . . . . . . .

"(d) When the person arrested is charged with violating Section 23102, 23102.5, or 23106." (Veh. Code, § 40302.)

633]; *People* v. *Yniguez, supra,* 15 Cal.App.3d 669, 673.) Intoxication caused by a drug likewise might justify such detention.

■ Our decision is not based upon such a holding, but upon the ground Nezet had probable cause to arrest for a violation of Vehicle Code section 23105. Persons about to enter jails or penal institutions may be examined by the custodian of such institutions for the purpose of preventing the bringing in of weapons and contraband. (*People* v. *Woods, supra,* 139 Cal.App.2d 515, 525; *People* v. *Yniguez, supra,* 15 Cal.App.3d 669, 673-674.)

■ A search of an arrested person at the time of his booking has always been considered contemporaneous to his arrest and is a reasonable search. **(5)** Government Code section 26640 provides in part: "The sheriff shall take charge of, safely keep, and keep a correct account of, all money and valuables found on each prisoner when delivered at the county jail." This section codifies the long-established right to search a prisoner when he is booked at the police station in order to prevent weapons and contraband from being brought into the jail, and to remove his personal effects from him. (*People* v. *Rogers,* 241 Cal.App.2d 384, 389 [50 Cal. Rptr. 559].)

■ Defendant's argument resolves itself to this: If there were probable cause to arrest for any offense, defendant should have been arrested on a misdemeanor charge of violating either section 23102 or section 23106.

We do not know if there is statistical information as to whether more persons are detected driving under the influence of a narcotic or amphetamine than under the influence of other drugs.

At the time of the arrest in the case at bench, the most recently published report by the Department of Corrections giving Summary Statistics of Felon Prisoners and Parolees, under the title, "California Prisoners," was that published for the year ending December 31, 1968. It shows that of prisoners received from the courts in that year the percentage of narcotics users among women was more than twice that of users of drugs other than narcotics or marijuana. Among men the percentage was about three times that of users of non-narcotic drugs, excluding marijuana.[8]

In those statistics the non-narcotic drugs would include amphetamines.

---

[8]California Prisoners (1968) tables 15A, 15B, pages 37-38, of which we take judicial notice.

There was no inherent unreasonableness in Nezet's belief defendant was under the influence of a narcotic rather than of a non-narcotic drug. In the absence of all evidence that it was not a good faith belief, the arrest for a violation of section 23105 was reasonable, as was the search of defendant's person at the jail.

The order appealed from is affirmed.

Brown (Gerald), P. J., and Ault, J., concurred.