[Sac. No. 7994. In Bank. May 5, 1975.]

JOSEPH GEE, Petitioner, v.
RAYMOND C. BROWN, as Chairman, etc., et al., Respondents.

572

**COUNSEL**

James F. Smith for Petitioner.

Charles C. Marson, Joseph Remcho, Peter E. Sheehan, Deborah Hinkel and Joel Zeldin as Amici Curiae on behalf of Petitioner.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., and Jack R. Winkler, Chief Assistant Attorneys General, Doris H. Maier, Assistant Attorney General, Arnold O. Overoye, James T. McNally and Brian Taugher, Deputy Attorneys General, for Respondents.

## OPINION

WRIGHT, C. J.—Joseph Gee, an inmate of the state prison, seeks to compel the Adult Authority (Authority) and the Department of Corrections to afford to him those rights prescribed·for parole revocation and rescission hearings in *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593] and *In re Prewitt* (1972) 8 Cal.3d 470 [105 Cal.Rptr. 318, 503 P.2d 1326], particularly including a conditional right to be represented by counsel at rescission hearings as has been afforded at revocation hearings in *Gagnon* v. *Scarpelli* (1973) 411 U.S. 778 [36 L.Ed.2d 656, 93 S.Ct. 1756] and *In re Love* (1974) 11 Cal.3d 179 [113 Cal.Rptr. 89, 520 P.2d 713].

We conclude under article I, section 7, of the California Constitution, that the conditional right to counsel exists at parole rescission hearings. Since the record discloses that petitioner may be able to satisfy the requirements which condition his right to counsel, the Authority must provide a new rescission hearing at which it must first determine whether petitioner is entitled to be represented by counsel before proceeding with the hearing in chief.

Petitioner was serving an indeterminate term of five years to life following his incarceration for a 1955 first degree burglary conviction. In 1959, 1964, and 1971 petitioner was released on parole but in each instance the parole was subsequently revoked. On May 23, 1972, petitioner's term was refixed at life and he was granted parole effective November 1, 1972. On August 11, 1972, petitioner's parole was modified to permit an earlier release date of September 5, 1972. On September 5, petitioner's release was delayed and he was placed on calendar for consideration of rescission of his grant of parole. The principal grounds for this action were correctional officers' reports that petitioner had made statements threatening violence upon his release, and a psychiatric report which questioned the advisability of immediate parole because of threats of violence made against inmates and others. The report also noted that "assaultive inclinations" were involved in the 1964 and 1971 parole

violations. On September 20, 1972, two members of the Authority concluded that petitioner's case should be considered by the full review board and on October 30, 1972, the full board rescinded the earlier action granting parole, denied a new grant of parole, and placed petitioner on the October 1973 calendar for further parole consideration.

On December 14, 1972, we filed our opinion in *In re Prewitt, supra,* 8 Cal.3d 470, holding that the *Morrissey* requirements of a formal hearing with written notice of the claimed violations of parole, disclosure to the parolee of evidence against him, an opportunity to be heard in person and to present documentary evidence and witnesses, the right to confront and cross-examine adverse witnesses (unless the hearing officer finds good cause for precluding confrontation), a neutral and detached hearing body, and a written statement of the evidentiary basis for the action were applicable to all parole rescissions as well as revocation proceedings occurring after June 29, 1972, the day on which *Morrissey* was decided. (*Id.* at pp. 476-477.)[1]

Petitioner was given another parole rescission hearing on January 17, 1974, ostensibly in compliance with *Prewitt*. He was not represented by counsel at this hearing. On January 29, 1974, petitioner was notified by the Authority that his parole was rescinded and that a new grant of parole was denied.

■ On April 11, 1974, we filed our opinion in *In re Love, supra,* 11 Cal.3d 179, holding that the rule enunciated in *Gagnon* v. *Scarpelli, supra,* 411 U.S. 778, affording a conditional right to counsel at revocation hearings, was to be given application only to revocation hearings conducted after May 14, 1973, the effective date of the *Gagnon* opinion. (*In re Love, supra,* 11 Cal.3d 179, 187.) *Gagnon* held that the conditional right to counsel was to be determined on a case-by-case basis by the revoking authority. *Love* also adopted *Gagnon's* statement that although the right to counsel in a particular case is left to the parole authority's discretion, there is a "presumptive" right to counsel where the parolee "denies that he committed the violations and where, even though he does not contest the existence of the violations, he asserts complex matters in mitigation." (*Id.* at p. 186; see *Gagnon* v. *Scarpelli, supra,* 411 U.S. 778, 790 [36 L.Ed.2d 656, 666].) Furthermore, *Love* reiterated the *Morrissey* and *Prewitt* rule that, since there is no significant qualitative distinction between the deprivation of liberty incident to parole revoca-

---

[1]We further held that the prerevocation hearing requirements of *Morrissey* were not applicable by analogy to parole rescission procedures. (*In re Prewitt, supra,* 8 Cal.3d 470, 476.)

tion and parole rescission, equivalent due process requirements are applicable. (*In re Love, supra,* 11 Cal.3d 179, 184; see also *Morrissey* v. *Brewer, supra,* 408 U.S. 471, 482 [33 L.Ed.2d 484, 495]; *In re Prewitt, supra,* 8 Cal.3d 470, 474.)

In *Wolff* v. *McDonnell* (1974) 418 U.S. 539 [41 L.Ed.2d 935, 94 S.Ct., 2963], the United States Supreme Court held, inter alia, that the full panoply of *Morrissey* and *Gagnon* due process requirements did not apply to prison disciplinary procedures such as loss of good time credits or imposition of solitary confinement. Since we have concluded in *Prewitt* and *Love* that there are no significant distinctions between the deprivation of the right to conditional liberty in the parole revocation and parole rescission contexts, and the full *Morrissey* and *Gagnon* protections existed in both instances, the *Wolff* decision confined as it is to prison disciplinary proceedings, does not affect the outcome of the case at bar.[2] In view of *Love's* reaffirmance of the similarity between deprivations of liberty in the parole revocation and parole rescission setting, we now hold that the conditional right to counsel afforded by *Love* and *Gagnon* where parole may be revoked also exists where parole may be rescinded.[3]

Petitioner presents compelling reasons for assistance of counsel at a new hearing. There were several grounds asserted for rescission including allegations that petitioner had made threats of violence to other inmates and to non-inmate acquaintances, that he had sent a threatening letter to an assemblyman's office, and that petitioner's file contained an adverse psychiatric recommendation which made references to other instances wherein petitioner had allegedly made threatening statements or exhibited belligerent behavior. ■ Petitioner denies making sever-

[2]The dissenting opinion totally disregards the effect of this court's unanimous decision in *In re Prewitt,* 8 Cal.3d 470 [105 Cal.Rptr. 318, 503 P.2d 1326]. *Prewitt's* recognition that the deprivation of the right to conditional liberty is identical in the parole revocation and parole rescission contexts undermines the dissent's analogy between parole rescission and prison disciplinary proceedings. The loss of "good time" credit with which *Wolff* was concerned (418 U.S. at p. 561 [41 L.Ed.2d at p. 953]) is far less consequential than the loss of a calendared parole date. In view of the significance of the loss. *Prewitt* mandates adherence to a stricter constitutional standard than that imposed in *Wolff.* The fact that the rescission hearing takes place in the "closed, tightly controlled" prison environment (*Wolff* v. *McDonnell, supra,* 418 U.S. at p. 561 [41 L.Ed.2d at p. 954]) is of no constitutional significance in the parole rescission context.

[3]We note, however, that where a disciplinary hearing has already been held in which facts which form the basis for the later rescission inquiry have already been determined against the parolee, that factor should be considered by the Authority when it examines the parolee's need for counsel's assistance at the rescission hearing. There was no disciplinary hearing in the instant case.

al of the alleged threatening statements or sending such a letter to the assemblyman. Furthermore, he asserts that many of the reported remarks were either trivial or can be placed in a context which mitigates their seriousness. Petitioner also challenges the conclusions reached by the Authority's psychiatrists and has offered the findings of his own psychiatrist which directly conflict with those relied on by the Authority. Furthermore, petitioner is described in an Authority staff report as a "dull-normal" individual with an evaluated educational level of approximately fourth grade and an I.Q. of 89.

The foregoing circumstances indicate that this is precisely the situation upon which *Gagnon*'s and *Love*'s presumptive right to counsel operates. In addition, petitioner's low intelligence level, which would certainly preclude him from effectively developing his case at the rescission hearing, further supports a "presumptive" right to counsel.

Since petitioner is entitled to a new rescission hearing on the ground that counsel's assistance at the hearing may be required, it is unnecessary to reach his second contention that the Adult Authority failed to comply with *Prewitt*'s requirement of full disclosure at the previous hearing.[4]

Let a peremptory writ of mandate issue directing the Authority to provide petitioner with a new rescission hearing conforming to the views expressed herein within 30 days of the finality of this opinion.[5]

McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Burke, J.,[*] concurred.

**CLARK, J.**—I dissent.

By modifying its opinion at denial of rehearing, the majority shifts its ground from the federal to the state Constitution for the obvious purpose

---

[4]We presume that petitioner's new hearing will fully comply with all of *Prewitt*'s requirements, including the disclosure to the parolee of the evidence against and favorable to him and the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation).

[5]Since this opinion merely reaffirms our recognition in *Prewitt* and *Love* of the similarity between deprivations of liberty in the parole revocation and parole rescission settings, and acknowledges that *Love* compels equivalent procedural due process protections in both settings, the relief afforded by this opinion shall be prospective as of the effective date of the *Gagnon* rule as announced in *Love,* that is May 14, 1973. (Accord, *Williams* v. *U.S. Board of Parole* (D. Conn. 1974) 383 F.Supp. 402.)

[*]Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

of insulating itself from review by the United States Supreme Court. I question the propriety of such action.

In *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593], the court held that the due process clause of the Fourteenth Amendment to the United States Constitution imposes certain minimum procedural requirements in parole revocation hearings.[1] In *Gagnon* v. *Scarpelli* (1973) 411 U.S. 778 [36 L.Ed.2d 656, 93 S.Ct. 1756], the court added a "conditional" right to counsel to the minimum requirements announced in *Morrissey*.[2] However, in *Wolff* v. *McDonnell* (1974) 418 U.S. 539, 569-570 [41 L.Ed.2d 935, 958-959, 94 S.Ct. 2963], the court declined to extend the conditional right to counsel to prison disciplinary hearings.

The question presented by this case is whether a conditional right to counsel at parole *rescission* hearings is mandated by the due process clause of the Fourteenth Amendment to the United States Constitution. The majority is persuaded by the analogy to parole *revocation* proceedings while I find rescission more akin to disciplinary proceedings, for reasons stated below.

This is a question about which reasonable men may differ pending its ultimate resolution by the United States Supreme Court. However, the majority cuts off debate by suddenly shifting the ground of its decision. After the majority opinion was filed, the first sentence of the second paragraph was modified to add the reference to the due process clause of the *California* Constitution (art. I, § 7). This modification must be construed as a transparent attempt to foreclose further review.

[1] These procedures were: "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." (408 U.S. at p. 489 [33 L.Ed.2d at p. 499].)

[2] "Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself." (411 U.S. at pp. 790-791 [36 L.Ed.2d at p. 666].)

Of his own court, Justice Jackson said, "We are not final because we are infallible, but we are infallible only because we are final." (*Brown* v. *Allen* (1953) 344 U.S. 443, 540 [97 L.Ed. 469, 532-533, 73 S.Ct. 397] (concurring opn.).) Of mine, I say we are neither final nor infallible in a matter whose genesis and growth clearly lie in the United States Supreme Court.

The conditional right to counsel should not be extended to parole rescission hearings.

In *Gagnon* v. *Scarpelli, supra,* the court acknowledged, with regret, its decision introducing counsel into revocation hearings would "alter significantly" the nature of the proceedings. "If counsel is provided for the probationer or parolee, the State in turn will normally provide its own counsel; lawyers, by training and disposition, are advocates and bound by professional duty to present all available evidence and arguments in support of their clients' positions and to contest with vigor all adverse evidence and views. The role of the hearing body itself, aptly described in *Morrissey* as being 'predictive and discretionary' as well as factfinding, may become more akin to that of a judge at a trial, and less attuned to the rehabilitative needs of the individual probationer or parolee. In the greater self-consciousness of its quasi-judicial role, the hearing body may be less tolerant of marginal deviant behavior and feel more pressure to reincarcerate than to continue nonpunitive rehabilitation. Certainly, the decision making process will be prolonged, and the financial cost to the State—for appointed counsel, counsel for the State, a longer record, and the possibility of judicial review—will not be insubstantial." (411 U.S. at pp. 787-788, fn. omitted [36 L.Ed.2d at p. 665].)

In *Wolff* v. *McDonnell, supra,* these considerations were among those leading the court to hold that inmates do not have a right to either retained or appointed counsel in *disciplinary* hearings. "The insertion of counsel into the disciplinary process would inevitably give the proceedings a more adversary cast and tend to reduce their utility as a means to further correctional goals. There would also be delay and very practical problems in providing counsel in sufficient numbers at the time and place where hearings are to be held." (418 U.S. at p. 570 [41 L.Ed.2d at p. 959].)

The same considerations militate against attorney participation in *rescission* hearings. Moreover, the countervailing considerations are no

weightier in rescission than in disciplinary proceedings. The inmate's stake in a disciplinary proceeding in Nebraska, e.g., can be as high as it is in a rescission hearing in California. Forfeiture of "good time" credit —one of the sanctions for serious misconduct in the Nebraska disciplinary system reviewed in *Wolff*—"can postpone the date of eligibility for parole and extend the maximum time to be served." (418 U.S. at p. 561 [41 L.Ed.2d at p. 953].) The issues in rescission are no more complex than in disciplinary proceedings. To the contrary, where a disciplinary infraction is charged as the basis for rescission (the usual case) the validity of the charge may have already been resolved in a disciplinary hearing, leaving only the question whether the infraction merits parole rescission. (*Ante*, p. 575, fn. 2.). Finally, rescission hearings—like disciplinary proceedings—"take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." (*Wolff* v. *McDonnell*, *supra*, 418 U.S. at p. 561 [41 L.Ed.2d at p. 954].) The "very different stake the State has in the structure and content" of proceedings occurring in such an environment was the "major consideration" leading the court to hold there is no constitutional right to counsel at disciplinary proceedings.[3] A like result is mandated in parole rescission hearings.

[3]"In striking the balance that the Due Process Clause demands, however, we think the major consideration militating against adopting the full range of procedures suggested by *Morrissey* for alleged parole violators is the very different stake the State has in the structure and content of the prison disciplinary hearing. That the revocation of parole be justified and based on an accurate assessment of the facts is a critical matter to the State as well as the parolee; but the procedures by which it is determined whether the conditions of parole have been breached do not themselves threaten other important state interests, parole officers, the police, or witnesses—at least no more so than in the case of the ordinary criminal trial. Prison disciplinary proceedings, on the other hand, take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so. Some are first offenders, but many are recidivists who have repeatedly employed illegal and often very violent means to attain their ends. They may have little regard for the safety of others or their property or for the rules designed to provide an orderly and reasonably safe prison life. Although there are very many varieties of prisons with different degrees of security, we must realize that in many of them the inmates are closely supervised and their activities controlled around the clock. Guards and inmates co-exist in direct and intimate contact. Tension between them is unremitting. Frustration, resentment, and despair are commonplace. Relationships among the inmates are varied and complex and perhaps subject to the unwritten code that exhorts inmates not to inform on a fellow prisoner.

"It is against this background that disciplinary proceedings must be structured by prison authorities; and it is against this background that we must make our constitutional judgments, realizing that we are dealing with the maximum security institution as well as those where security considerations are not so paramount. The reality is that disciplinary hearings and the imposition of disagreeable sanctions necessarily involve confrontations between inmates and authority and between inmates who are being disciplined and those who would charge or furnish evidence against them. Retaliation is much more than a theoretical possibility; and the basic and unavoidable task of providing reasonable

The writ should be denied.

Respondents' petition for a rehearing was denied June 6, 1975. Richardson, J., did not participate therein. Clark, J., was of the opinion that the petition should be granted.

---

personal safety for guards and inmates may be at stake, to say nothing of the impact of disciplinary confrontations and the resulting escalation of personal antagonisms on the important aims of the correctional process."