[Crim. No. 19216. June 21, 1976.]

THE PEOPLE, Plaintiff and Appellant, v.
RICHARD THOMAS MAHER, Defendant and Respondent.

## COUNSEL

Joseph P. Busch and John K. Van de Kamp, District Attorneys, Harry B. Sondheim and Jay J. Becker, Deputy District Attorneys, for Plaintiff and Appellant.

Richard S. Buckley, Public Defender, Harold E. Shabo, Robert J. Levy and Martin Stein, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

**MOSK, J.**—At noontime on August 13, 1973, Officer Shirah of the Los Angeles Police Department observed defendant alternately staggering along a downtown street and leaning against buildings for support. Noting defendant's bloodshot eyes and the odor of alcohol, the officer concluded that defendant was inebriated and arrested him for the misdemeanor offense of public intoxication. (Pen. Code, § 647, subd. (f).) Officer Shirah called for a "B-wagon" to transport the defendant, and searched him before placing him in the vehicle. The officer first conducted a pat-down, but felt nothing resembling a weapon. He then undertook a full body search of defendant's clothing, and in a jacket pocket found a cellophane bag containing marijuana. At the preliminary hearing the officer testified he was looking for concealed weapons and had not suspected defendant of carrying contraband.

 Defendant was held to answer on a charge of violating section 11357 of the Health and Safety Code (possession of marijuana). His motion to set aside the information (Pen. Code, § 995) was submitted on the transcript of the preliminary hearing. The motion was granted on the ground that the only material evidence of the charged offense was seized as the result of an illegal search. The People appeal. (Pen. Code, § 1238, subd. (a)(1).)

We conclude that the search of defendant's person beyond the scope of a pat-down was unlawful under article I, section 13, of the California Constitution, and hence that the information was properly set aside by the trial court.

The full body search of defendant was invalid under the principles set forth by this court in *People* v. *Longwill* (1975) 14 Cal.3d 943 [123 Cal.Rptr. 297, 538 P.2d 753]. *Longwill* is the most recent in a series of opinions in which we developed the criteria for determining the permissible scope of a search of an arrestee being transported by police officers. (*People* v. *Norman* (1975) 14 Cal.3d 929 [123 Cal.Rptr. 109, 538 P.2d 237]; *People* v. *Brisendine* (1975) 13 Cal.3d 528 [119 Cal.Rptr. 315, 531 P.2d 1099]; *People* v. *Superior Court (Simon)* (1972) 7 Cal.3d 186 [101 Cal.Rptr. 837, 496 P.2d 1205].) Beginning with *Simon,* we have classified the offense in terms of the possible disposition of the arrest, i.e., whether the arrestee is to be cited and immediately released, or taken before a magistrate or other official and given the opportunity to post bail, or booked and incarcerated. (*Brisendine,* 13 Cal.3d at p. 536.) ■ The rule to be distilled from these decisions is that a full body search incident to arrest is impermissible when the person is arrested for an offense for which he will merely be cited or released on bail. In *Brisendine* we also adopted the view originally expressed by the Chief Justice in his concurring opinion in *Simon,* i.e., that the limited intrusion of a pat-down is permissible before such a person is transported to the stationhouse or other place for further disposition. (13 Cal.3d at p. 537, citing *Simon,* 7 Cal.3d at p. 214.)

In *Longwill* we were specifically concerned with the permissible scope of the pretransportation search of an individual arrested for public intoxication. The defendant in that case was charged with narcotics offenses on the basis of contraband recovered in a full body search before he was placed in a patrol car. We held that a full search was forbidden until such time as the arrestee was actually to be incarcerated in a jail or committed to a civil detoxification center. Noting the various dispositional alternatives available to the arresting officer, we observed that such an arrestee is often not incarcerated. It was therefore concluded that a full body search at the time of arrest could not be justified as an "accelerated booking search." (14 Cal.3d at p. 948.) Applying the rule of *Brisendine,* however, we stated that a pretransportation pat-down for weapons would be permissible. (*Id.,* at pp. 949-950.)

■ *Longwill* is plainly dispositive of the case now before us. The only factual distinction between the two cases is that Longwill was placed in the back seat of a patrol car whereas defendant here was placed in the back of a B-wagon. The People contend that a B-wagon is a "mobile jail" and therefore the full body search should be upheld as a "jailhouse search" made immediately before defendant was "incarcerated." It is

argued that the considerations which justify the full search of a person being booked prior to incarceration are also present when an arrestee is placed in a B-wagon.

We do not agree. In stating our conclusions in *Longwill,* we referred broadly to "the police vehicle." (14 Cal.3d at pp. 949-951.) A B-wagon is a police vehicle. Being fully aware of the use of B-wagons by police departments, we neither expressed nor intimated an intention to limit the effect of our decision to transportation in patrol cars.

The People fail to satisfactorily explain what significant physical differences between a B-wagon and patrol car justify treating the former but not the latter as a jail. The record does not indicate whether defendant was handcuffed, or whether he was the only arrestee in the B-wagon. Even assuming that defendant was not handcuffed and that he remained in the presence of other arrestees without an accompanying officer, we are not persuaded that a jail environment was created.

The B-wagon is a van-like vehicle commonly used by police to patrol areas frequented by public inebriates. It has a separate locked compartment where a small group of arrestees may be isolated from the officers while being transported to the central detention facility; the practice of handcuffing arrestees or placing an officer in the back compartment presumably varies in different jurisdictions and according to the circumstances of the particular arrest. Similarly, a patrol car typically has a barrier between the front and back seats to separate the officers from persons taken into custody, and special rear doors that lock from the outside. The only real distinction between the two vehicles is that the B-wagon can transport several more persons. This factor alone, however, does not transform a B-wagon into a mobile jail. Arrestees who are locked in a B-wagon are no more "incarcerated" than their counterparts who are locked in the back seat of a patrol car.

An examination of the policy underlying jailhouse searches demonstrates that an arrestee's brief sojourn in a B-wagon or other type of police vehicle cannot be considered incarceration for purposes of search and seizure law. Traditionally it was recognized that a person being processed for incarceration could be searched. The purpose was threefold: to maintain jail security, to discover evidence pertaining to the crime charged, and to safeguard the prisoner's personal belongings. At common law the search was not necessarily related to the right to search incident to arrest, but was considered a lawful and customary jail

detention routine. (Gardner & Manian, Principles and Cases of the Law of Arrest, Search, and Seizure (1974) p. 200.) Courts today still employ the same rationale in upholding these searches, citing the need to provide for the safety of police personnel and other prisoners, to prevent the introduction of weapons and contraband into the jail, and to inventory the entering prisoner's property. (*People* v. *Munsey* (1971) 18 Cal.App.3d 440, 448 [95 Cal.Rptr. 811]; *People* v. *Superior Court (Fuller)* (1971) 14 Cal.App.3d 935, 945 [92 Cal.Rptr. 545]; see *People* v. *Ross* (1967) 67 Cal.2d 64, 70 [60 Cal.Rptr. 254, 429 P.2d 606], revd. on other grounds *sub nom. Ross* v. *California* (1968) 391 U.S. 470 [20 L.Ed.2d 750, 88 S.Ct. 1850].) The rationale behind these security measures is obvious: in a jail setting, a substantial number of persons are involuntarily confined for varied periods throughout a vast facility where constant supervision is not feasible. These circumstances do not prevail when one or at most a few persons are placed in a closed vehicle for the relatively short journey to the stationhouse. In sum, a B-wagon, like other police vehicles, is not a jail.

The People next suggest that the full body search was justified here because defendant was "temporarily detained." The People rely on a series of decisions in which a person arrested for a bailable offense was searched before being placed in jail because he could not post bond. (*People* v. *Gilliam* (1974) 41 Cal.App.3d 181 [116 Cal.Rptr. 317]; *People* v. *Collin* (1973) 35 Cal.App.3d 416 [110 Cal.Rptr. 869]; *People* v. *Rhodes* (1972) 23 Cal.App.3d 257 [100 Cal.Rptr. 487].) But these cases are not relevant because they involve situations in which the defendants were actually introduced into the jail community. Insofar as these authorities reflect the distinctive policy underlying the jailhouse search, they strengthen our conclusion that a full body search of the occupant of a B-wagon is not permissible.

It is also urged that the threat to the safety of police officers and other arrestees is greater when more than one arrestee is placed in a B-wagon and that a full body search is therefore necessary in these circumstances. The People point out that a police officer may be found civilly liable for injuries suffered by an arrestee while in his custody. (Gov. Code, § 844.6, subd. (d); cf. *Larson* v. *City of Oakland* (1971) 17 Cal.App.3d 91 [94 Cal.Rptr. 466].) But an officer would be liable for such injuries only in the event he failed to act in a reasonably prudent manner under the circumstances. *Longwill* permits the officer to conduct a pat-down of each arrestee placed in the B-wagon; if during the course of the pat-down he feels a hard object similar to a common weapon or can

point to specific facts which support a reasonable suspicion that the arrestee is carrying an atypical weapon, the officer may conduct a full body search. (*People* v. *Collins* (1970) 1 Cal.3d 658, 663 [83 Cal.Rptr. 179, 463 P.2d 403]; see *Longwill,* 14 Cal.3d at p. 950.) Likewise, the officer could be found civilly liable for conduct resulting from limiting the search to a pat-down only if he was presented with facts justifying a full body search and unreasonably failed to act. The constitutional restrictions on the right to search an occupant of a B-wagon or other police vehicle therefore do not compel the officer to be negligent in his duty toward other prisoners.[1]

Nor do we perceive a significant threat to the safety of the officers in charge of the B-wagon. Persons arrested for public intoxication are not commonly known to carry atypical concealed weapons.[2] It is also highly improbable, as a general proposition, that a covey of staggering and helpless inebriates like this defendant in the back of a secure B-wagon will design an escape plot or execute a coordinated group attack on the officers driving the van. Accordingly, we conclude that a full body search of a person arrested for public intoxication before being placed in a B-wagon cannot be justified as a necessary step to protect police officers or other persons in their custody.

In *Longwill* we observed that "Our decisions do not permit a distinction to be made between: (1) transportation to a magistrate as in *Simon;* (2) transportation to a magistrate for the offense of evading arrest as in *Norman;* and (3) transportation to the stationhouse for ultimate disposition by release and/or citation prior to incarceration as is the case with a significant percentage of public inebriates. In all these situations

---

[1]The People's argument is reminiscent of the rationale of *Morel* v. *Superior Court* (1970) 10 Cal.App.3d 913 [89 Cal.Rptr. 297]. *Morel* held that as a matter of law, regardless of whether the arrestee was charged with a jailable offense, a full body search was required prior to transportation in a police vehicle in order to protect officers and other arrestees and prevent the disposal of contraband. (10 Cal.App.3d at pp. 917-918.) In *Simon* we rejected this analysis and specifically disapproved *Morel.* (7 Cal.3d at pp. 210-211.)

[2]The arresting officer in the present case testified that the purpose of his search was to "check for weapons and, particularly, for razor blades that people take with them on the wagon. They are hard to find." The People did not offer any evidence to suggest defendant was so armed. This court has previously expressed its disapproval of frivolous or highly speculative suppositions to justify a weapons search beyond the scope of a pat-down. (*People* v. *Collins* (1970) *supra*, 1 Cal.3d 658, 663, disapproving *People* v. *Armenta* (1968) 268 Cal.App.2d 248 [73 Cal.Rptr. 819].) The unsupported reference to "razor blades that people take with them on the wagon" appears to fall into that category.

the same factors are operative: the potential harm to the officer if the arrestee is armed justifies a limited weapons search, but a full booking search is 'inappropriate in the context of an arrestee who will never be subjected to that process.' " (14 Cal.3d at p. 950.)

■ We now hold that by parity of reasoning our decisions do not permit a finely honed distinction in any of the above situations between transportation by patrol car and transportation by any other type of police vehicle. When the only justification for searching an arrestee is transportation in a police vehicle, the search must be limited to a pat-down for weapons, unless the arresting officer is able to articulate, in exceptional circumstances, specific justification for a more expansive invasion of the arrestee's person.

■ The People have the burden of justifying a warrantless search. (*Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].) The evidence presented at the preliminary hearing herein offers no justification for the full body search of defendant. Accordingly, we hold that the evidence recovered in that search was illegally seized in violation of article I, section 13, of the California Constitution. Because there is no other competent evidence sufficient to hold defendant to answer to the crime charged, he was committed without probable cause, as the trial court properly ruled. (Pen. Code, § 995.)

The order is affirmed.

Wright, C. J., Tobriner, J., and Sullivan, J., concurred.

**RICHARDSON, J.**—I concur, under the compulsion of *People* v. *Longwill* (1975) 14 Cal.3d 943 [123 Cal.Rptr. 297, 538 P.2d 753]. *Longwill,* in reliance upon *People* v. *Norman* (1975) 14 Cal.3d 929 [123 Cal.Rptr. 109, 538 P.2d 237], and *People* v. *Brisendine* (1975) 13 Cal.3d 528 [119 Cal.Rptr. 315, 531 P.2d 1099], refused to follow clearly applicable precedents of the United States Supreme Court which would have permitted full body searches of all persons subjected to custodial arrest. As I expressed in a concurring opinion in *Norman* (14 Cal.3d at p. 940), and in a dissenting opinion in (*People* v. *Disbrow* (1976) 16 Cal.3d 101, 117, 118-121 [127 Cal.Rptr. 360, 545 P.2d 272]), in the absence of some persuasive reason otherwise, I believe we should follow the decisions of the United States Supreme Court in its construction of federal constitutional provisions which are essentially identical to those of our state Constitution.

Assuming, however, the validity of the *Longwill* rule, I agree that the case is controlling here.

**CLARK, J.,** Dissenting.—Unless its text, history or function supports a broader construction, a state constitutional provision affords no greater right than the parallel provision of the federal Constitution. The United States Supreme Court has interpreted the Fourth Amendment as permitting full body searches of all persons subjected to custodial arrest. (*United States* v. *Robinson* (1973) 414 U.S. 218 [38 L.Ed.2d 427, 94 S.Ct. 467]; *Gustafson* v. *Florida* (1973) 414 U.S. 260 [38 L.Ed.2d 456, 94 S.Ct. 488].) The texts of the search-and-seizure clauses of the California and federal Constitutions are virtually identical.[1] Neither the history nor the function of the California provision supports this court's recent conclusion that article I, section 13 imposes a "more exacting standard" than the Fourth Amendment. (See *People* v. *Brisendine* (1975) 13 Cal.3d 528, 553-558 [119 Cal.Rptr. 315, 531 P.2d 1099] (Burke, J., dissenting); *People* v. *Norman* (1975) 14 Cal.3d 929, 940-942 [123 Cal.Rptr. 109, 538 P.2d 237] (Clark, J., dissenting); *People* v. *Longwill* (1975) 14 Cal.3d 943, 952 [123 Cal.Rptr. 297, 538 P.2d 753] (Clark, J., dissenting).) Assuming arguendo that this case is indistinguishable from *People* v. *Longwill, supra,* I dissent for reasons expressed more fully in the aforementioned cases. (See also *Gee* v. *Brown* (1975) 14 Cal.3d 571, 576-577 [122 Cal.Rptr. 231, 536 P.2d 1017] (Clark, J., dissenting); *United Farm Workers of America* v. *Superior Court* (1975) 14 Cal.3d 902, 914-915 [122 Cal.Rptr. 877, 537 P.2d 1237] (Richardson, J., concurring); *People* v. *Disbrow* (1976) 16 Cal.3d 101, 117, 118-121 [127 Cal.Rptr. 360, 545 P.2d 272] (Richardson, J., dissenting); *People* v. *Ramey* (1976) 16 Cal.3d 263, 277-281 [127 Cal.Rptr. 629, 545 P.2d 1333] (Clark, J., dissenting).)

Further, I dissent on the ground this case is distinguishable from *Longwill.* In *People* v. *Brisendine, supra,* a majority of this court allowed that "both the justification and the scope of a weapons search incident to an arrest are dependent on the relative danger to the officer . . . ." (13 Cal.3d at p. 536.) Transporting an arrestee by "B-wagon" rather than by patrol car is significantly more dangerous to both transporting officers and other arrestees. Therefore, while limiting the scope of a pretranspor-

---

[1]Article I, section 13 of the California Constitution provides in pertinent part: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated . . . ." The Fourth Amendment to the United States Constitution provides in pertinent part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."

tation search to a pat-down for patrol cars, this court should permit a full body search for B-wagons.

In assessing the precautionary measures reasonably required for the respective modes of transportation, the most significant difference between patrol car and B-wagon lies in the ratio between arrestees and officers. In a patrol car, one, two, sometimes three, arrestees are transported by one or two officers. In a B-wagon, while the number of officers remains the same, the arrestees may number 12. Moreover, in a patrol car security measures customarily include handcuffing and seating the arrestee next to an officer. In a B-wagon, arrestees and officers are in separate compartments; to prevent falls, accidents to which inebriates are particularly liable, handcuffs are not customarily used.

In light of these differences, the necessity of distinguishing between patrol car and B-wagon transportation should be evident. Nevertheless, the majority refuse to recognize the distinction, professing to find it "highly improbable" that a "covey of staggering and helpless inebriates" pose a "significant threat to the safety of the officers in charge of the B-wagon." (*Ante,* p. 202.) The facts support the opposite conclusion. "The figures show that crimes of physical violence are associated with intoxicated persons. Cuttings (11 to 1 under the influence of alcohol), the carrying of concealed weapons (8 to 1 under the influence of alcohol) and other assaults (10 to 1 under the influence of alcohol) are definitely crimes of alcohol influence, even crimes of true intoxication."[2] Given this propensity to violence, failure to search an inebriate prior to transportation in a B-wagon obviously increases the peril to the officers as well as to the other arrestees. The majority prefer the privacy of one over the safety of several; I do not.

McComb, J., concurred.

---

[2]Shupe, *Alcohol and Crime: A Study of the Urine Alcohol Concentration Found in 882 Persons Arrested During or Immediately After the Commission of a Felony* (1954) 44 J. Crim. L.C. & P.S. 661, 663, quoted in President's Commission on Law Enforcement and Administration of Justice, Report (1967) Drunkenness, pages 13-14.